IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUSTIN MAPLES,

    Plaintiff,

vs.                                        1:12-cv-00294 JB/RHS

MATTHEW VOLLMER,
an Officer of the Albuquerque
Police Department, Individually,

D. FOX,
an Officer of the Albuquerque
Police Department, Individually,

CITY OF ALBUQUERQUE,
a municipality organized under the
laws of the State of New Mexico,

    Defendants.

## MOTION TO DISMISS

**COME NOW**, Defendants the City of Albuquerque, D. Fox and Matthew Vollmer, by and through Assistant City Attorney Kristin J. Dalton, and request that this Court enter an Order of dismissal as a sanction for Plaintiff having committed perjury during discovery. Plaintiff's counsel was contacted to determine whether they would oppose this Motion, but at the time of filing, Plaintiff's counsel had not responded to defense counsel. Opposition is presumed. In support of their Motion, Defendants state as follows:

## INTRODUCTION

Plaintiff's case arises from his arrest on January 26, 2010.  On January 26, 2010, Detectives Fox and Vollmer were dispatched to 1111 Major NW in reference to Plaintiff causing a disturbance at a residence. [*See* Affidavits of Matthew Vollmer and David Fox, *attached hereto as* **Exhibits 1 and 2**.]  Plaintiff was a suicide threat, had just been released from the University of New Mexico Hospital and was attempting to gain unlawful access into the home.  *Id.*  Officer Vollmer arrived at 1111 Major NW in full Albuquerque Police Department ("APD") uniform in and in marked police squad car.  Officer Vollmer observed Plaintiff on the property behind a closed gate.  [*See* M. Vollmer Affidavit, ¶ 4.]

Officer Vollmer observed unusual behavior from Plaintiff and recognized him from past calls involving Plaintiff's suicide attempts and other past violent behavior.  *Id.* ¶¶ 5-6.  Plaintiff was displaying behavior that was consistent with a subject about flee; namely, looking back and forth.  *Id.*  Officer Vollmer, concerned for Plaintiff's safety due to prior suicide attempts, the most recent of which was the night before, ordered Plaintiff to come towards him, on the street. *Id.*  ¶¶ 7-8.  Plaintiff initially complied with this lawful order, opened the gate approximately four (4) feet wide and then stated that he could not fit through the fence.  *Id.* ¶¶ 7-9.  Plaintiff then began to walk away from Officer Vollmer despite commands to stop.  *Id.* ¶ 10.  Plaintiff began to run northbound through the yard and towards the house that he was attempting to gain unlawful access to.  *Id.* ¶ 11.  Officer Vollmer pursued Plaintiff into the back yard of the home and ordered him to get on the ground.  *Id.* ¶ 12.  Plaintiff did not obey this command either and Officer Vollmer deployed his OC spray from approximately ten (10) feet away, but struck Plaintiff on the side of his face, as Plaintiff had turned his head.  *Id.*

Plaintiff then jumped onto a barbeque grill located near the back block wall, which then fell over as Plaintiff got on top of the wall. *Id.* ¶ 13. Officer Vollmer again utilized his OC spray, but struck Plaintiff on the head. *Id.* ¶ 14. Plaintiff jumped over the wall. *Id.* Officer Fox was on the other side of the wall in his marked patrol car, in full APD uniform as Plaintiff jumped over the wall. [*See* D. Fox Affidavit, ¶ 4.] Officer Fox had received a call to respond to 1111 Major NW but as he was enroute, he heard Officer Vollmer call out a foot chase headed north from the residence. *Id.* ¶¶ 2-3. Officer Fox observed Plaintiff come over the wall and run towards his vehicle. *Id.* ¶ 5. Officer Fox ordered Plaintiff to stop, but Plaintiff continued to move, although he slowed a little because the vehicle was in the way. *Id.* ¶ 5. Officer Fox ran towards the rear of the vehicle because Plaintiff was headed towards the passenger side of the police vehicle and as he did, Plaintiff slowed, balled up his fists and took a bladed stance, appearing as though he were ready to attack. *Id.* ¶ 5. Officer Fox again ordered Plaintiff to stop and when Plaintiff did not obey this lawful command, Officer Fox deployed his OC spray to Plaintiff's facial area at which point Plaintiff stopped. *Id.* ¶ 6. Plaintiff was placed in handcuffs and rescue was called to check on him. *Id.* ¶¶ 6-7. Plaintiff was later transported the prisoner transport center by Officer Vollmer, booked and later sent to MDC. *Id.* ¶ 7; M. Vollmer Affidavit ¶¶ 16-17.

As a result of this incident and Plaintiff's subsequent arrest, Plaintiff has brought claims against Defendants for false arrest, false imprisonment, assault, battery, excessive force in addition to claims for municipal liability and respondeat superior against the City of Albuquerque.

**BACKGROUND**

1. Plaintiff Justin Maples filed this civil lawsuit in the Second Judicial District Court on January 26, 2012. [Doc. 1-1]

2. This case was removed to federal court on March 22, 2012. [Doc. 1]

3. On July 19, 2012, Defendant City of Albuquerque sent Plaintiff its First Set of Interrogatories and First Requests for Production. [*See* Doc. 16]

4. On September 24, 2012, Plaintiff responded to Defendant's discovery by providing Responses to Defendant's First Requests for Production and Answers to Defendant's First Set of Interrogatories.

5. In his Responses to Defendant's First Requests for Production, Plaintiff provided no documentation other than signed medical releases for Defendant to obtain his medical records. [*See* Plaintiff's Responses to Defendant's First Requests for Production, *attached hereto as* **Exhibit 3**.]

6. In answer to Interrogatory No. 7, which requested the following: "the name, address and phone number of any health care provider, including, without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which treated you within the last 10 years" Plaintiff responded by answering as follows: "UNMH primary care Hospital, seen physicians for health/wellness, mental health clinic; [peer-to-peer counseling after DWI, In Los Lunas- - Valencia Counseling. [sic] [*See* Plaintiff's Answers to Defendant's First Set of Interrogatories, *attached hereto as* **Exhibit 4**.]

7. In answer to Interrogatory No. 8, which requested the following: "Please list the name, address and phone number of any mental health counselors, clinics and hospitals which

treated you within the last 10 years for any psychological and/or mental health treatment" Plaintiff responded by answering as follows: "Please see my answer to Interrogatory No. 7, I have only been seen at UNMH and the clinic I believe was called Valencia Counseling." [*See Exhibit 4*.]

8. In answer to Interrogatory No. 9, which requested the following: "Please state the name, address and phone number of each person who was with Plaintiff Justin Maples or has any knowledge of his activities on January 26, 2010" Plaintiff responded by answering as follows: "Kevin Lane and his daughter Sarah Lane[.]" [*See Exhibit 4*.]

9. In answer to Interrogatory No. 10, which requested the following:

> State whether during the ten years immediately prior to the date of the occurrence alleged in the Complaint you had been confined to a hospital or other medical care facility or x-rayed for any reason. If so, for each such instance, state: a. The name, address and phone number of the hospital or medical care facility, medical doctor, osteopath, chiropractor, other health care provider; b. The approximate date of each such care, confinement, treatment or service;   c.The reason for each such care, confinement, treatment or service; and d. Whether you (the Plaintiff) suffered any permanent effects or disability as a result thereof

Plaintiff responded by answering as follows: "Yes, I was. UNMH; suicide attempts/risk. I am willing to provide you with a reasonable medical release for my records."  [*See Exhibit 4*.]

10. In answer to Interrogatory No. 13, which requested the following: "Please state your whereabouts on January 26, 2010 prior to the incident alleged in your Complaint" Plaintiff responded by answering as follows: "Home at 1111 Major Ave; all of the events happened at approximately 10:30 am; I was at residence since prior evening." [*See Exhibit 4*.]

11. Plaintiff answered Interrogatory No. 18 by stating that he was kicked in his abdominal area and back after he was "tackled" to the ground and maced. [*See Exhibit 4*.]

12.     In answer to Interrogatory No. 27, which requested the following: "Please describe, in detail, how the incident on January 26, 2010 occurred, as it pertains to the allegations in your Complaint" Plaintiff responded by answering as follows:

> My Complaint speaks for itself.  The events happened as follows:
> . . . on or about January 26, 2010, Defendants Matthew Vollmer and D. Fox were dispatched to Plaintiff's residence and/or otherwise decided to respond to a 911 call at Plaintiff's residence.  According to Defendant Matthew Vollmer and/or Defendant Fox, Plaintiff was standing in his front yard when they arrived at the residence.
>     Upon information and belief, Plaintiff tried to walk away from Defendant Matthew Vollmer and/or Defendant D. Fox.  It was lawful for Plaintiff to decline to talk to Defendant Matthew Vollmer and/or Defendant D. Fox.  It was lawful for Plaintiff to walk away from the Defendant Matthew Vollmer and/or Defendant D. Fox.  Defendant Matthew Vollmer and/or Defendant D. Fox chased after Plaintiff.
>     Plaintiff fled from Defendant Matthew Vollmer and/or Defendant D. Fox. Defendant Matthew Vollmer and/or Defendant D. Fox tackled Plaintiff. Defendant Matthew Vollmer and/or Defendant D. Fox used excessive and unnecessary force against Plaintiff.  The use of force against Plaintiff by Defendant Matthew Vollmer and/or Defendant D. Fox caused him to suffer damages.

13.     In his deposition, Plaintiff testified that he had not taken any medications or anything else that would affect his ability to understand the questions asked of him or affect his ability to recall events.  [*See* Maples Depo. 5:5-11, *attached hereto as* **Exhibit 5**.]  Plaintiff also testified that he had not taken anything that would affect his ability to answer questions truthfully.  *Id.*

14.     During his deposition, Plaintiff was asked four times, in various forms, if he was having trouble with his memory and he answered "No."  [Maples depo. 13:12-13, 28:20-29:6, 35:24-36:4, 36:14-17]

15.     Plaintiff testified that the night before the incident underlying this lawsuit, he was at home, doing chores and hanging out with "Kevin."  [Maples depo. 39:19-40:8]  Plaintiff also

testified that the night before this incident, he went to bed between ten and midnight and had smoked marijuana between eight and ten. [Maples depo. 41:6-18]

16.     Plaintiff testified that the incident underlying this lawsuit occurred at 9 a.m. [Maples depo. 40:18-20] Plaintiff testified that he had an argument with Kevin Lane's daughter, Sarah after she arrived at the house about 8:00 - 8:30 a.m. [Maples depo. 42:1-12] Plaintiff testified that after the argument, Kevin and Sarah went outside to the front yard of the house and he went to the kitchen and poured himself a cup of coffee. After he poured the coffee, he saw Kevin and his daughter speaking to a police officer outside. [Maples depo. 45:6-19] He testified that he went out to the front porch and the officer asked him to "come here" so he went to the gate. The officer asked him what was going on and asked him to step outside of the gate. He opened the gate, at which point the officer approached him with his hand on his hip, so he shut the gate and started running. [Maples depo. 45:25-46:7] The officer was never closer than three to five feet from him. [Maples depo. 51:6-13]

17.     Plaintiff admitted to fleeing from the police officer. [Maples depo. 51:14-52:4, 52:12-54:2] Plaintiff could not remember whether the officer said anything to him as he fled. *Id.*

18.     During his deposition, Plaintiff was asked to describe what happened after he was handcuffed. [Maples depo. 59:5-10] Plaintiff described the officer having a conversation with one another and calling rescue. *Id.*

19.     During his deposition, Plaintiff was asked about the police report where it stated "Justin Maples was contacted after leaving the hospital at 1111 Major Northwest in reference to him causing a disturbance" and Plaintiff testified, contrary to his earlier testimony, that he

couldn't recall whether he had been at the hospital the evening prior to this incident. [Maples depo. 93:11-94:11].

20. Plaintiff also testified that the incident occurred around 9:00 a.m., despite the police report indicating that the incident occurred at 2:43 p.m. [Maples depo. 94:12-95:10; Exhibit 1 to Maples. depo, *attached hereto as **Exhibit 6***]. Additionally, the CADS from this incident indicate that officers were dispatched to 1111 Major at 14:43:44. [*See* Police Call #P100260696, *attached hereto as **Exhibit 7***]

21. When confronted with a police report from January 25, 2010 at military time 2337, Plaintiff testified that he could not recall being contacted by the police on that evening. [Maples depo. 97:6-98:13; 98:23-99:8; *See* Exhibit 2 to Maples depo., *attached hereto as **Exhibit 8***] The police report from January 25, 2010 contradict Plaintiff's answers in discovery and his testimony under oath that he was home and in bed before midnight on the evening of January 25, 2010.

22. Plaintiff again contradicted prior testimony by later testifying that the incident occurred between 9:00 and 10:30. [Maples depo. 100:25-101:14]

23. At the end of his deposition, Plaintiff offered testimony in response to his attorney's questions that after he was taken down during the incident, he felt as if he had been kicked and/or punched, which contradicted earlier testimony that after he was cuffed the officers held a conversation and called rescue. [Maples depo. 108:18-109:7; 109:13-112:15]

24. In addition to the police report from January 25, 2010, there is an ambulance report from January 25, 2010 confirming that Plaintiff had made a threat of suicide, that Plaintiff's brother was present at the home during that time and that Plaintiff was transported

from the home to the hospital. [*See* Albuquerque Ambulance report dated 1/25/10, *attached hereto as* **Exhibit 9**; *see* Albuquerque Fire Department report dated 1/25/10, *attached hereto as* **Exhibit 10**]

24.     In addition to the police report from January 25, 2010, medical records have been gathered from the University of New Mexico Hospital with regard to Plaintiff's visit to the hospital. Those records indicate that Plaintiff was kept overnight by hospital staff and released at 9:57:22 on January 26, 2010. [*See* UNMH records, *attached hereto as* **Exhibit 11**]

25.     Contrary to his representation in his answers to Interrogatories with regard to previous hospitalizations, *supra* ¶¶ 6, 7, defense counsel received records from Presbyterian indicating that Plaintiff had been seen there for injuries he sustained in 2004, 2005, 2009. [*See* Presbyterian records, *attached hereto as* **Exhibits 12, 13, 14, 15**] Presbyterian had not been listed as one of Plaintiff's health care providers or ever otherwise disclosed by Plaintiff.

26.     Contrary to his deposition testimony, Plaintiff reported to a medical provider at UNM that he used methamphetamine, *inter alia*, after 2009. Additionally, on March 4, 2010, Plaintiff tested positive for alcohol, methamphetamine and cocaine. [Maples depo. 27:24-28:3, 31:6-14; *see* UNM record, *attached hereto as* **Exhibit 16**]

## LEGAL ARGUMENT

Plaintiff clearly perjured himself during discovery and his deposition. *Supra*. Dismissal of Plaintiff's case is an appropriate sanction for his perjury because the circumstances presented herein are similar to the circumstances in *Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.*, 70 F.3d 1172 (10th Cir. 1995). In *Archibeque*, the plaintiff sought damages for an injury she sustained while working for a railway company. *Id.* at 1173. During discovery, the plaintiff

withheld information about prior injuries she had suffered.  *Id.* at 1173.  The court found that the omission of discovery evidence was sufficient to justify dismissal as a sanction.  *Id.* at 1175.

In this case, Plaintiff committed perjury in several ways.  First, Plaintiff provided only the following as his health care providers for the last 10 years: "UNMH primary care Hospital, seen physicians for health/wellness, mental health clinic; [peer-to-peer counseling after DWI, In Los Lunas- - Valencia Counseling. [sic]"  *Supra*, ¶ 6.  This is false information; defense counsel obtained records from Presbyterian in 2004, 2005 and as recently as 2009.  *Supra,* ¶ 25.  Second, Plaintiff indicated that the only hospital he had been seen at for the 10 years prior to the occurrence was UNMH.  *Supra*, ¶ 9.  Given the mere existence of the records from Presbyterian Hospital, this is a false answer.  Third, Plaintiff provided false information as to his whereabouts on the morning of January 26, 2010 and the evening of January 25, 2010.  *Supra*, ¶ 10.  Records from Albuquerque Ambulance, Albuquerque Fire Department and UNMH contradict Plaintiff's testimony that he was "home" or at the residence of 1111 Major since the prior evening.  The UNMH records indicate that he was not discharged from the hospital until nearly 10 a.m. on the morning of January 26, 2010.  Even worse, Plaintiff attempted to subvert Defendants' attempt to prove his blatant perjury by stating that he "didn't remember" being transported to the hospital the night of January 25, 2010.  *Supra* ¶ 21.

Fourth, Plaintiff stated in his answers to discovery, *supra* ¶ 11, that he was kicked in his abdominal area after he was "tackled"; an answer he did not provide during his deposition. *Supra*, ¶ 23.  Fifth, in his answers to discovery, *supra* ¶ 12, Plaintiff stated that he was in the front yard at the time Defendant Vollmer and/or Fox arrived at the residence in response to being dispatched there or in response to a 911 call, in stark contrast to his deposition testimony.  *Supra*

¶ 16. Plaintiff's blatant disregard for the judicial system and the somberness of the sworn testimony alone justifies dismissal of his case with prejudice.

The Tenth Circuit has articulated a number of factors that a district court may consider in determining whether dismissal is an appropriate sanction. *See Archibeque*, 70 F.3d at 1174. Those factors include the following:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Id.* This list of factors is not exhaustive, nor are the factors necessarily equiponderant. *Id.*; *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). Moreover, the Tenth Circuit has made it clear that dismissal is appropriate when perjury is involved.

> It has long been understood that '[c]ertain implied powers must necessarily result to our courts of justice from the nature of their institution,' power 'which cannot be dispensed with in a court because they are necessary to the exercise of all others.' *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812); *see also Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997). Among the multifarious manifestations of the court's inherent powers is the authority to vacate a judgment when a fraud has been perpetrated on the court, *Chambers*, 501 U.S. at 44, such as when a party has perjured himself during the discovery process. *Archibeque v. Atchison, Topeka & Santa Fe Railway Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043-44 (10th Cir. 2009). Additionally, when false answers are given under oath, as is the case with Plaintiff's answers to interrogatories and his deposition testimony, dismissal is an appropriate sanction. *See Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 1180 (10th Cir. 2009). Dismissal as a sanction has been imposed in cases with discovery violation less egregious than this one. *See Ehrenhaus*, 965 F.2d 916. In *Ehrenhaus*, the district court dismissed the plaintiff's case for failure to appear at a

deposition; there was no evidence that the plaintiff had intentionally submitted false evidence or deceived the court but the sanction was upheld. *Id.* at 919.

### I.  PREJUDICE

Plaintiff's untruthfulness has prejudiced Defendants because it has hampered their ability to file a motion for summary judgment on qualified immunity grounds. In making a determination whether or not any of the individual defendants used excessive force against Plaintiff, a determination must be made into whether their actions were "objectively reasonable" under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Fourth Amendment standard requires inquiry into the factual circumstances of every case. *Id.* at 396. The relevant factors in this inquiry include the crime's severity, the potential threat posed by the suspect to the officer's and other's safety and the suspects attempts to resist or evade arrest. *Id.*

Plaintiff was untruthful about his intent to elude or flee Officer Vollmer and Officer Fox. Because of this untruthfulness, Defendants are prejudiced in their ability to present evidence of his attempts to resist or evade arrest on a motion for summary judgment on the grounds of qualified immunity. Defendants' theory is that Officer Vollmer knew that Plaintiff was a suicide threat and that Plaintiff had attempted to commit suicide just the night before the arrest that is the subject of this lawsuit. Additionally, the defense theory is that Officer Vollmer knew that Plaintiff was attempting to gain unlawful access to the residence at 1111 Major NW following his discharge from UNMH. Because Plaintiff's actions and behavior at the time of Officer Vollmer's arrival at the scene indicated that he did not want to be apprehended, Plaintiff's actions of fleeing gave Officer Vollmer reason to fear for Plaintiff's safety and for the safety of those in the home who had called to have Plaintiff removed from their residence.

Plaintiff claims that he was home the evening before his arrest and was getting a cup of coffee when Officer Vollmer arrived at the residence. *Supra*, ¶ 16. Plaintiff further claims that he was lawfully in the house. Plaintiff claimed that he ran from the police officer because he was scared of him. Because Plaintiff has not admitted to being hospitalized the night before his arrest and having been released just a few hours prior to time of his arrest, Plaintiff has attempted to create a factual issue which has severely hampered Defendants' ability to prove the *Graham* factors of attempts to resist or evade law enforcement for the purposes of Defendants' motion for summary judgment motion on qualified immunity grounds.

Plaintiff's untruthfulness has also prejudiced Defendants' ability to prepare for and present evidence at trial. It is Defendants' contention that Officer Vollmer knew of Plaintiff's prior suicide attempt and was therefore concerned for Plaintiff's safety at the time he arrived at 1111 Major NW. Plaintiff would deny being hospitalized the evening prior to his arrest. Plaintiff would also attempt to create an issue of whether he was lawfully on the property located at 1111 Major NW by insisting that he had spent the night there.

Additionally, Defendants have been prejudiced in their ability to impeach Plaintiff in accordance with FED. R. EVID. 608 and 609. Plaintiff's credibility is paramount in this case and Plaintiff's attempts to subvert Defendants' efforts to impeach him with evidence that he had been hospitalized for a suicide attempt on the evening of January 25, 2010 and evidence that he was not lawfully on the property located at 1111 Major NW puts Defendants at a serious tactical disadvantage, particularly with regard to the *Graham* factors. Impairing a party's ability to prepare for and introduce evidence at trial because of untruthfulness during discovery is a basis upon which to establish prejudice to warrant dismissal of the action. *See*, *e.g.*, *Archibeque*, 70

F.3d 1172. Plaintiff's failure to identify his medical providers in a truthful manner, failure to be honest about his illicit drug use and failure to provide truthful answers with regard to the amount of force used during his arrest all impair Defendants' ability to prepare this case for trial and introduce testimony about these subjects.

## II.     INTERFERENCE WITH THE JUDICIAL PROCESS

Plaintiff's untruthfulness is not negligible.  As explained above, Plaintiff has been untruthful about where he was on the evening of January 25, 2010 and when confronted with his untruthfulness, attempted to subvert Defendants' intention to impeach him by stating that he "didn't remember" having the police respond to his suicide attempt or his overnight hospitalization.  Such a contention is fanciful at best.  Moreover, this lie has hampered Defendants' ability to seek summary judgment using the application of the *Graham* factors of the severity of Plaintiff's crime, the potential threat posed by the suspect to the officer's and other's safety and the suspect's attempts to resist or evade arrest.  *Graham*, 490 U.S. at 396.  Plaintiff has placed himself at a tactical advantage of claiming that he was lawfully at the residence and was not disturbing the peace or scaring the occupants of the home, leading to the call for service. Because these issues of material to Defendants' ability to prove the *Graham* factors, Plaintiff's untruthfulness has significantly interfered with the judicial process.

Plaintiff also failed to provide truthful answers to Interrogatories, which was discovered by Defendants and revealed through the Presbyterian records.  Defendants have not been afforded the opportunities otherwise available to them to discover Plaintiff's history of illnesses, injuries, arrests, etc . . .  This too is a blatant disregard of the judicial process.

### III. CULPABILITY OF THE LITIGANT

Plaintiff is culpable for his own actions of being untruthful in discovery in this case. Plaintiff was given the opportunity in his deposition to discuss the officer's reasons for pursuing him and why his reasons, offered during discovery, differed from Officer Vollmer's and Officer Fox's reasons. Yet he continued to be untruthful about what he done the evening prior to his arrest and even went so far as to describe his illegal activities of smoking pot and specifically describing the time of night he went to bed. Even more unbelievable are Plaintiff's description of his activities the morning of his arrest and how he was getting a cup of coffee inside the residence when Officer Vollmer arrived as some part of a set-up to have him arrested. [Maples depo. 73:16-74:4; 80:15-21; 81:6-16] No one forced Plaintiff to testify in this manner and it is hard to understand or fathom any explanation as to how Plaintiff didn't remember being contacted by law enforcement on the evening of January 25, 2010, being transported to UNMH and having spent the night at UNMH, other than to cover up his earlier lie about his activities the evening before.

### IV. PRIOR WARNING

As explained in *Archibeque* and *Chavez*, this case does not merit giving Plaintiff prior warning before Plaintiff faces the ultimate sanction of dismissal. Plaintiff has already weaved his tangled web of lies throughout discovery and such a web cannot be untangled by removing a single strand. As the Tenth Circuit explained in *Chavez*:

> [B]ecause the perjurious testimony was given under oath, an additional warning would have been superfluous at best. 'Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely, to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.

*Chavez*, 402 F.3d at 1045 (quoting *Webb v. Texas*, 409 U.S. 95, 97 (1972)); *see also Garcia*, 569 F.3d at 1180.

## V.     LESSER SANCTIONS

Lying under oath does not merit a lesser sanction as it demonstrates a blatant disregard and disrespect for the judicial process and renders the oath given to deponents entirely meaningless. Quite simply, Plaintiff's untruthfulness makes a mockery of the judicial process. *See Chambers v. Nesco, Inc.*, 501 U.S. 32, 44 (1991) (tampering with the administration of justice "is a wrong against the institutions set up to protect and safeguard the public."); *see also ABF Freight Systs. v. NLRB*, 510 U.S. 317, 326 (1984) ("[T]he greatest consequence of lying under oath is the affront to the law itself."). Witness are placed under oath for a reason. The oath is supposed to promote confidence that the witness is testifying truthfully to the best of their knowledge and belief. If there are no severe consequences imposed for committing perjury multiple times, the oath would be meaningless. Not only would a lack of consequences render the oath meaningless, it would encourage witnesses to be cavalier in their obligation to respect judicial decorum by testifying truthfully. Plaintiff has told multiple untruths under oath in this case which has undermined Defendants' ability to impeach him, prepare for trial or, perhaps most importantly, prepare a motion and file a motion for summary judgment on the basis of qualified immunity. This Court is not tasked with imposing a lesser sanction, but rather imposing the appropriate sanction under the circumstances: dismissal.

**WHEREFORE** Defendants request that this Court grant their Motion to Dismiss Plaintiff's Complaint in its entirety as a sanction for Plaintiff's perjury during discovery,

attorneys' fees and costs for bring this Motion and such other and further relief as this Court deems necessary and appropriate.

Respectfully submitted,

**CITY OF ALBUQUERQUE**
David J. Tourek, City Attorney

/s/ Kristin J. Dalton
Kristin J. Dalton
Assistant City Attorney
P. O. Box 2248
Albuquerque, NM 87102
(505) 768-4500

*Attorney for Defendants City of Albuquerque,
Officers Matthew Vollmer and D. Fox*

I certify that a true copy of the foregoing pleading was e-filed and served to:

Albert L. Hutchinson, Jr.
Anna C. Martinez
AEQUITAS LAW, LLC
P.O. Box 25304
Albuquerque, NM 87125
(505) 750-8005

*Attorneys for Plaintiff*

on this 20th day of December, 2012.

/s/ Kristin J. Dalton
Assistant City Attorney