## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUSTIN MAPLES,

        Plaintiff,

vs.                                     No. CIV 12-0294 JB/RHS

MATTHEW VOLLMER,
an Officer of the Albuquerque
Police Department, Individually,

DAVID FOX, an Officer of the Albuquerque
Police Department, Individually,

CITY OF ALBUQUERQUE,
a municipality organized under the
laws of the State of New Mexico,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion in Limine No. 3:
Exclusion of Testimony and Evidence Regarding Contents of 911 Call <u>Other Than</u> the Information
Known to the Defendant Police Officers, filed February 28, 2013 (Doc. 34)("Motion in Limine").
The Court held a hearing on March 5, 2013.  The primary issue is whether the Court should
exclude testimony and/or evidence about the contents of Sarah Lane's 911 call, which prompted
police to respond to 1111 Major NW, Albuquerque, New Mexico, where Plaintiff Justin Maples'
arrest occurred. The Court will grant in part and deny the Motion in Limine.  Because the
reasonableness of an officer's arrest is determined from a reasonable officer's perspective with the
information that the officer had at the time of the arrest, the information communicated to
Defendants Matthew Vollmer and/or David Fox (the "Individual Defendants") only, and not the
statements as communicated to the 911 call operator, are relevant to Maples' claims under the

Fourth Amendment to the United States Constitution.   The 911 call's contents are relevant to rebut Maples' contention that he was properly and lawfully at 1111 Major, however, as S. Lane explains to the 911 Operator that her call stems from her belief that Maples is not supposed to be there.   S. Lane's relevant out-of-court statements in the 911 call, although hearsay, are admissible as present sense impressions and excited utterances.   The Court, at the present time, will not admit the recording in evidence, however, because the Defendants have not met the foundational requirements to show the record is a regularly conducted activity under rule 803(6) of the Federal Rules of Evidence.   The Court will thus deny in part the Motion in Limine and admit testimony and evidence at trial about the 911 call's contents -- S. Lane's statements.   The Court will grant in part the Motion in Limine at the present time and exclude the 911 call's recording.   If at trial or sometime before trial the Defendants can lay the proper foundation for its admission under 803(6), the Court may then admit the recording in evidence.

## FACTUAL BACKGROUND

On January 26, 2010, Vollmer and Fox were dispatched to 1111 Major Avenue, Albuquerque, New Mexico, Maples' residence, because of a 911 call made by Sarah Lane, Maples' then-boyfriend's daughter.   See Complaint for Damages, Declaratory and Injunctive Relief and Petition for Writ of Mandamus ¶ 12, at 3, filed in state court on January 26, 2012, filed in federal court March 22, 2012 (Doc. 1-1)("Complaint").   Maples was standing in his front yard when the officers arrived and he tried to walk away from them.   See id. ¶¶ 13-14, at 3.   Vollmer and Fox chased after Maples, and Maples then fled from the officers.   See id. ¶¶ 17-18, at 3. Vollmer and/or Fox tackled Maples when they caught up to him.   See id. ¶ 19, at 3.   Maples alleges that Vollmer and Fox used "excessive and unnecessary force" against him, id. ¶ 20, at 4,

and "caused him to suffer damages," <u>id.</u> ¶ 21, at 7.   Vollmer placed Maples in handcuffs, arrested him, transported him to the prisoner transport center, and booked him.   <u>See</u> Affidavit of Matthew Vollmer ¶¶ 16-17, at 3, filed December 20, 2012 (Doc. 19-1).

## PROCEDURAL BACKGROUND

Maples instituted this lawsuit in state court on January 26, 2012, and the Defendants removed the case to this federal court on March, 22, 2012.   <u>See</u> Notice of Removal (Doc. 1). Maples alleges that Defendants Vollmer, Fox, and the City of Albuquerque violated his constitutional rights by using excessive force in arresting him on January 26, 2010, at 1111 Major, and falsely imprisoning him following his arrest.   Maples states that the "City of Albuquerque is sued under 42 U.S.C. § 1983 for damages under a theory of municipal liability for failure to adequately train [sic] supervise Defendant Matthew Vollmer and/or Defendant D. Fox and for its customs, policies, and/or practices."   Complaint ¶ 3, at 2.   Maples also sues the City of Albuquerque "under the New Mexico Tort Claims Act . . . for damages under a theory of *respondeat superior*."   Complaint ¶ 4, at 2.   Maples states that "[t]his is a civil action for monetary damages, arising from Plaintiff's claims that he was illegally arrested, illegally imprisoned, suffered excessive force, and was otherwise wronged by Defendants Matthew Vollmer and D. Fox . . . ."   Complaint ¶ 10, at 3.   Maples alleges nine counts against the City of Albuquerque pursuant to the New Mexico Tort Claims Act, N.M.S.A. 1978, §§ 41-4-1 to -30 ("NMTCA"), and 42 U.S.C. § 1983.   <u>See</u> Complaint ¶¶ 22-72, at 4-11.

On February 28, 2013, Maples filed this Motion in Limine, asking the Court to prohibit the Defendants or their witnesses

> from disclosing to the jury, directly or indirectly, any evidence, argument, opinion, or other testimony concerning the contents of the 911 call made by Plaintiff's then

> boyfriend's daughter on the date in question other than the information that was
> known to the officers at the time that th[e]y made contact with Plaintiff.

Motion in Limine at 1.   Maples argues that, because the excessive force allegation depends on the

facts and circumstances known to the officers at the time that they applied the force, what S. Lane

told the 911 operator is irrelevant unless the information was known to the officers executing

Maples' arrest.   See Motion in Limine at 2 (citing ENG v. Scully, 146 F.R.D. 74, 77 (S.D.N.Y.

1993)).   He asserts that statements in the 911 call that were not relayed to the officers are not

relevant to any material issue and will not help the factfinder.   See Motion in Limine at 2.   He

contends that "[t]he fact that Ms. Lane's 911 call contains information that was factually untrue --

an allegation that Plaintiff was not supposed to be at his own home -- further weighs in favor of

excluding testimony concerning the contents of the call."   Motion in Limine at 2.   Maples asserts

that S. Lane's statements in the 911 call not relayed to the officers before they arrested Maples "is

the type of evidence that Rule 403 excludes as being unfairly prejudicial."   Motion in Limine at 3

(citing United States v. Zeuli, 725 F.2d 813, 817 (1st Cir. 1984)).

On March 4, 2013, the Defendants filed their Defendants' Response to Plaintiff's Motion

in Limine No. 3: Exclusion of Testimony and Evidence Regarding Contents of 911 Call Other

Than the Information Known to Defendant Police Officers.   See Doc. 47 ("MIL Response").

The Defendants argue that S. Lane's statements in the 911 call are "relevant and admissible under

Fed. R. Evid. 106, 401, 404(b), 801(d)(1)(C), 803(1), 803(3) and 803(6)."   MIL Response at 2.

They assert that Maples' contention that statements other than those the Defendants knew at the

time of the arrest fails to account that the 911 is part of the totality of circumstances relevant to

whether the Defendants' conduct was reasonable in their use of force.   See MIL Response at 2.

The Defendants contend that, although the officers did not speak to S. Lane, "they are imputed

with knowledge of the actual information conveyed by Ms. Lane because the information from the call was shared via dispatch."   MIL Response at 3 (citing United States v. Shareef, 100 F.3d 1491, 1503 (10th Cir. 1996)).   The Defendants argue that the entirety of the 911 call is relevant and the Court should admit the entire recording "to establish that the officers reasonably relied on the information contained in the call."   MIL Response at 3.   They contend that the jury's task in making this determination "entitle[s] [them] to evaluate all of this information in the record vis-à-vis the 911 call and transcript in order to determine whether the officers reasonably relied on the information being conveyed."   MIL Response at 4 (citing United States v. Brown, 496 F.3d 1070 (10th Cir. 2007)).   They assert that the 911 communication "is inextricably intertwined with the explanation as to why officers were directed to 1111 Major . . . ."   MIL Response at 4 (citing United States v. Starr, 276 F. App'x 761, 2008 WL 1844080 (10th Cir. 2008)).   The Defendants also argue that they anticipate Maples will assert at trial that he was not at the hospital the morning of the incident, and will assert that he was lawfully on the property when Vollmer and Fox arrested him.   See MIL Response at 4-5.   The Defendants contend that S. Lane's statements in the 911 call are probative of the truthfulness of these assertions, because S. Lane contradicts them during the call.   See MIL Response at 6.   Finally, the Defendants assert that the 911 call is admissible in its entirety under rule 803(6) of the Federal Rules of Evidence, because "the 911 calls and radio transmissions are recorded and kept in the regular course of business of the Albuquerque Police Department Communications Center."   MIL Response at 6.

At the hearing, the Defendants argued that the 911 call goes to the totality of the circumstances, as the "tenor of the call" can change the priority of a call from category two to a

priority one call.  See Transcript of Hearing at 7:10-13 (taken Mar. 5, 2013)(Dalton)("Tr.").[1]

The Court asked whether the 911 call or the tenor of the 911 call as the operator heard it matters,

because the test for whether an officer's use of force is reasonable under the circumstances is what

a reasonable officer who had the same information had would have done in the circumstances.

See Tr. at 7:17-19 (Court).   The Defendants agreed that the test turns on the information that the

officers had, but argued that "it also goes to how the knowledge is imputed to the officers through

the 911 call to dispatch, dispatch to the officers, and that's in the Shareef case in the Tenth

Circuit."   Tr. at 7:22-25 (Dalton).   The Court asked whether United States v. Shareef limits the

trial use of information to information which was shared with the investigating or arresting officer.

See Tr. at 8:4-6 (Court).   The Defendants replied that the information is relevant for purposes

other than what the officers knew at the time of the arrest and is also needed to impeach Maples'

credibility.   See Tr. at 8:7-9:1 (Dalton, Court).   The Court asked whether his credibility matters

for bringing in the 911 call in the Defendants' case-in-chief and whether the Defendants could

"think of any fact that is [] going to be related over the 911 call that the officers themselves can't

testify was in their head that's critical . . . or important . . . ."   See Tr. at 9:10-14 (Court).   The

Defendants responded that they could not think of any such fact.   See Tr. at 15-16 (Court).   The

Defendants asserted that they need the information to rebut Maples' contention that he was

lawfully on the property, to which the Court inquired whether S. Lane's testimony as a witness

would be sufficient for rebuttal purposes.   See Tr. at 10:10-11 (Court).   The Defendants asserted

that it is additional evidence rebutting Maples' version and supporting S. Lane's and the

Defendants' positions.   See Tr. at 10:16-18 (Dalton).   In response to the Court's inquiry, Maples

---

[1]   The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcripts may contain slightly different page and/or line numbers.

asserted that he is worried about the 911 call coming in because there are untrue facts in the call about whether Maples resided at the property.   <u>See</u> Tr. at 10:21-24 (Court, Martinez).   The Court asked whether those statements matter, because they will likely be admitted through S. Lane's testimony, the computer aided dispatch ("CAD") report, and likely through the officers' testimony.   <u>See</u> Tr. at 11:2-5 (Court).   Maples noted that he does not object to the CAD report's admission into evidence, because it does not contain S Lane's "claim[] that Mr. Maples was not supposed to be there."   Tr. at 11:12-13 (Martinez).   The Defendants added that the call is important to their case, as "the tenor of the call itself, the frantic worried nervous nature of the call itself goes to what was going on at the time of the incident . . . .   [I]t's important for the jury to assess what was happening [] at the time and what was relayed to the 911 dispatcher."   Tr. at 12:5-14 (Dalton).

On March 5, 2013, pursuant to the Court's request, the Defendants supplied the Court with a compact disc containing a digital recording of S. Lane's 911 call.   <u>See</u> Defendant's Trial Exhibit C: Recording of 911 Call Made By Sarah Lane on January 26, 2010 to be Hand-Delivered to the Court and Mailed to Opposing Counsel, filed March 5, 2013 (Doc. 58)("S. Lane's 911 Call Recording").   The Court listened to the call in camera on March 10, 2013.

## LAW REGARDING RULE 403

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401.   "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."   <u>Train v. City of Albuquerque</u>, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court of the United States noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."   Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802).   Under rule 801(c) of the Federal Rules of Evidence, "'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."   United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).   A statement that is otherwise hearsay,

however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.   See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.   If admitted for impeachment purposes, however, it is not hearsay.").

      1.      **Law Regarding Rule 803(1).**

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing an event or condition, made while or immediately after the declarant perceived it."   Fed. R. Evid. 803(1).   "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question."   United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994).   "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures."   Brown v. Keane, 355 F.3d 82, 89 (2d Cir. 2004).   "The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication."   United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995) cert. granted, judgment vacated on other grounds, 516 U.S. 1168 (1996).   "The admissibility of spontaneous utterances -- one ground relied on by the state trial court -- was recognized by the Supreme Court over a century ago in Insurance Co. v. Mosley, 75 U.S. (8 Wall.) 397, 406-07 . . . (1869)."   Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989).

      2.      **Law Regarding Rule 803(2)**

Rule 803(2), commonly referred to as the excited utterance exception, provides an exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).   The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'"   United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001)).   "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement." United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999))(internal quotations and changes omitted).   The United States Court of Appeals for the Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's required analysis for whether a statement is admissible under the excited-utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event.   [T]here is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance.   Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself.   There is no hard time limit that must be met under Rule 803; what is relevant is whether the declarant is still under the excitement of the startling event.

606 F.3d at 1279 (internal citations and question marks omitted).   The Tenth Circuit has noted:

> Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event.   Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the

declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009). "Permissible subject matter of the statement is [not] limited . . . to description or explanation of the event or condition . . . . [T]he statement need only relate to the startling event or condition, thus affording a broader scope of subject matter coverage." United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(quoting Fed. R. Evid. 803 Advisory Comm. Notes). "If the trial court has access to a recording of the declarant's statement, it may also consider the declarant's 'tone and tenor of voice' in determining whether the declarant made that statement while under the stress of excitement." United States v. Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(Quoting United States v. Woodfolk, 656 A.2d 1145, 1151 n.16 (D.C. 1995)(collecting cases)).

The United States Court of Appeals for the Second Circuit has provided an analysis of the similarities and subtle differences between the present sense impression and excited utterance exceptions to the rule against hearsay:

> As defined by the Federal Rules of Evidence, a present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Rule 803(1), Fed. R. Evid. Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory. See United States v. Brewer, 36 F.3d 266, 272 (2d Cir. 1994).

> The hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), Fed. R. Evid. As we have explained, "[t]he rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." [United States v. ]Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)]. Unlike present sense impressions,

-12-

"[a]n excited utterance need not be contemporaneous with the startling event to be admissible."  Id.   Rather "[t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), 'under the stress of excitement caused by the event or condition.'"  United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990).

. . . .

Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement "describe or explain" the contemporaneous event or condition, Rule 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - i.e. those that "relate to" the event.   Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

Many courts across the country have found it proper to admit a 911 caller's statements as a present sense impression and/or an excited utterance.   See, e.g., United States v. Thomas, 453 F.3d 838, 841 (7th Cir. 2006)(holding that admission of a three minute and fifty-three second 911 call, in which the caller said that a man holding a handgun had shot someone outside her apartment and was still there, and in which "emergency operator [] asked a series of questions about the facts of the situation and the caller narrated what she was seeing as it happened," was proper as either a present sense impression or excited utterance); United States v. Hawkins, 59 F.3d at 730 (holding that the tape of 911 emergency telephone call from defendant's wife reporting that defendant displayed gun to wife during domestic dispute was proper as a present sense impression, because of its sufficient contemporaneity to underlying events and because of its reliability, as evidenced by wife's detailed description of gun); United States v. Mejia-Valez, 855 F. Supp. 607 (E.D.N.Y. 1994)(concluding that admission of two callers' 911 call tape recordings as excited utterances and present sense impressions was proper, because the two callers were at the scene of the underlying

-13-

shooting, the calls were placed moments after the shooting, and both men described the facts of the shooting, including giving the location and the shooter's description).

3.   **Law Regarding Rule 803(6)**

Rule 803(6) provides an exception to the rule against hearsay statements for records of regularly conducted activity, often referred to as the business records exception:

> A record of an act, event, condition, opinion, or diagnosis if:
>
>> **(A)** the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
>>
>> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> **(C)** making the record was a regular practice of that activity;
>>
>> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>>
>> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).   The Tenth Circuit has noted that "[t]he rationale behind this exception is that business records 'have a high degree of reliability because businesses have incentives to keep accurate records.'"   United States v. Ary, 518 F.3d 775, 786 (10th Cir. 2008)(quoting United States v. Gwathney, 465 F.3d 1133, 1140 (10th Cir. 2006)).   A business record prepared "in anticipation of litigation is not [recorded] in the regular course of business."   United States v. Gwathney, 645 F.3d at 1140 (quoting Timberlake Const. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 342 (10th Cir. 1995)).   "Any information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible."   United States v. Gwathney, 645 F.3d at 1141 (citing Wilson v. Zapata Off-Shore Co., 939 F.2d

260, 271 (10th Cir. 1991)).   The proponent of the evidence must lay the foundation for its

admission.   See United States v. Ary, 518 F.3d at 786 ("The proponent of the document must also

lay this foundation for its admission.")(citing United States v. Samaniego, 187 F.3d 1222, 1224

(10th Cir. 1999)).

## LAW REGARDING UNLAWFUL ARREST

"A police officer violates an arrestee's clearly established Fourth Amendment right to be

free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."

Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennessee v. Garner, 471

U.S. 1, 7 (1985)).   "The law . . . is unambiguous: a government official must have probable cause

to arrest an individual." Cortez v. McCauley, 478 F.3d 1108, 1117 (10th Cir. 2007)(citing

Tennessee v. Garner, 471 U.S. at 7).   See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)("[T]he

Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to

believe that the suspect has committed or is committing an offense.").   "Probable cause exists if

facts and circumstances within the arresting officer's knowledge and of which he or she had

reasonably trustworthy information are sufficient to lead a prudent person to believe that the

arrestee has committed or is committing an offense."   Keylon v. City of Albuquerque, 535 F.3d

1210, 1216 (10th Cir. 2008)(quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)).   The

Supreme Court has stated that the existence of probable cause for an arrest depends on whether,

based on historical facts leading up to the arrest, an objectively reasonable police officer would

find probable cause:

> The principal components of a determination of reasonable suspicion or probable
> cause will be the events which occurred leading up to the stop or search, and then
> the decision whether these historical facts, viewed from the standpoint of an
> objectively reasonable police officer, amount to reasonable suspicion or to

probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

Ornelas v. United States, 517 U.S. 690, 696-97 (1996)(quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982))(alterations in original).

## **RELEVANT LAW REGARDING EXCESSIVE FORCE**

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." Saucier v. Katz, 533 U.S. 194, 207 (2001).   See Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009)("A Fourth Amendment claim of excessive force is analyzed under the 'objective reasonableness' standard that governs other Fourth Amendment inquiries.").   Hence, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   Graham v. Connor, 490 U.S. 386, 396 (1989).   The Tenth Circuit has explained:

Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors:   the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(quoting Graham v. Connor, 490 U.S. at 396)(internal quotation marks and citations omitted).   Additionally, a court must judge the reasonableness of a particular use of force from the "perspective . . . of the information possessed by the [officers]."   Weigel v. Broad, 544 F.3d at 1152 (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987))(citations and internal quotes omitted).

-16-

When analyzing a § 1983 claim for both excessive force and unlawful arrest, a court must look first at whether the arrest was lawful, and then at whether the officers' use of force was reasonable in light of the lawfulness of the arrest. The Tenth Circuit has explained:

> [I]n cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it.  If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force <u>reasonably</u> employed in effecting the arrest.  If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap. The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.

<u>Cortez v. McCauley</u>, 478 F.3d 1108, 1127 (10th Cir. 2007)(emphasis added).   Moreover,

> in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

<u>Cortez v. McCauley</u>, 478 F.3d at 1126.   See <u>Smith v. Kenny</u>, 678 F. Supp. 2d 1124, 1161 (D.N.M. 2009)(Browning, J.)(noting that finding the officers' use of force is "commensurate with the circumstances" depends upon whether the arrest was lawful or unlawful).   Thus, if it is clear that the amount of force used would have been reasonable if the detention or arrest had been appropriate, then the plaintiff can recover damages only for the unlawful arrest -- including any damages that flow from the officers' use of force during the arrest -- but there will be no separate excessive-use-of-force claim.

## LAW REGARDING THE COLLECTIVE KNOWLEDGE DOCTRINE

"Under the collective-knowledge doctrine -- also called the 'fellow officer rule' -- the knowledge of one officer supporting a search or seizure may be imputed to other law enforcement

officers acting in conjunction with the knowledgeable officer."   James v. Chavez, 830 F. Supp. 2d

1208, 1260 (D.N.M. 2011)(Browning, J.)(citing United States v. Hensley, 469 U.S. 221, 232-33

(1985); United States v. Wilkinson, 633 F.3d 938, 941 (10th Cir. 2008)).   The collective-

knowledge doctrine stems from United States v. Hensley, in which the Supreme Court held that

evidence uncovered in the police officers' stop of a defendant based on a notice that another state

issued about the defendant's outstanding warrant was admissible, stating that "the evidence

uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin

possessed a reasonable suspicion justifying the stop."   469 U.S. at 223.   There are two categories

under which the collective-knowledge doctrine imputes knowledge among officers: "'horizontal'

collective knowledge and 'vertical' collective knowledge."   United States v. Chavez, 534 F.3d

1338, 1345 (10th Cir. 2008).

"The first category subsumes situations where a number of individual law enforcement

officers have pieces of the probable cause puzzle, but no single officer possesses information

sufficient for probable cause."   United States v. Chavez, 534 F.3d at 1345 (citing United States v.

Shareef, 100 F.3d 1491, 1503-05 (10th Cir. 1996)).   In these situations, a court "must consider

whether the individual officers have communicated the information they possess individually,

thereby pooling their collective knowledge to meet the probable cause threshold."   United States

v. Chavez, 534 F.3d at 1345 (citations omitted); United States v. Christy, 810 F. Supp. 2d 1219,

1261 (D.N.M. 2011)(Browning, J.).   The second category subsumes situations "where one officer

has probable cause and instructs another officer to act, but does not communicate the corpus of

information known to the first officer that would justify the action."   United States v. Chavez, 534

F.3d at 1345 (emphasis in original).   In these situations, the relevant inquiry is whether the officer

who requested that the other law enforcement officer conduct a search or make a seizure had a sufficient legal basis to make the request.  See United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1227 (10th Cir. 2008)("When law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert -- rather than the officer who conducted the challenged action -- had the requisite level of suspicion."). The first and second categories are not mutually exclusive; for example, "the officer who has probable cause may possess that information as a result of communication from other officers." United States v. Chavez, 534 F.3d at 1345 n.12.

While the collective-knowledge doctrine is most commonly applied to impute reasonable suspicion or probable cause to other officers, see, e.g., United States v. Chavez, 534 F.3d at 1345-46, several courts and judges have stated or suggested that it also can be used to impute knowledge of exigent circumstances, see, e.g., United States v. Russell, 436 F.3d 1086, 1094-95 (9th Cir. 2006)(Thomas, J., concurring in part and dissenting in part)("We analyze the 'reasonable grounds to believe that there is an emergency at hand,' on an objective basis, taking into consideration the collective knowledge of the officers at the time." (citing United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir. 1986))); Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003).  The Court has adopted this view and applies the collective-knowledge doctrine in its exigent circumstances analysis.  See James v. Chavez, 830 F. Supp. 2d at 1261 ("The Court will take into account this collective-knowledge rule in its exigent circumstances analysis."); United States v. Christy, 810 F. Supp. 2d at 1262 ("The Court will apply the collective-knowledge doctrine in its determination whether exigent circumstances existed and whether there was sufficient probable cause to obtain a warrant.").

## ANALYSIS

The 911 call's contents, other than the information in the CAD Report that the officers received before Maples arrest, is not probative whether the officers' force used in arresting him was reasonable and is thus irrelevant to Maples' Fourth Amendment claims.   S. Lane's statements in the 911 call about Maples' unlawful or wrongful presence at 1111 Major is probative, however, to rebut Maples' contention that he was lawfully and properly on the property at the time the officers arrested him.   Because the parties represent that S. Lane and Maples will both testify at the trial, the same information will be admitted through S. Lane's trial testimony, and Maples' trial testimony will thus have to rebut the assertions regardless whether they come in through the 911 call or her trial testimony.   The 911 call's contents' prejudice to Maples does not, therefore, substantially outweigh its probative value.   Because S. Lane's relevant statements in the 911 call are admissible hearsay as both present sense impressions and excited utterances, the Court will admit S. Lane's statements about whether Maples was properly at 1111 Major when the officers arrested him.

**I.   BECAUSE THE REASONABLENESS OF THE OFFICERS' CONDUCT IN ARRESTING MAPLES IS BASED ON WHAT A REASONBLE OFFICER WOULD DO GIVEN THE INFORMATION VOLLMER AND FOX HAD AT THE TIME THEY ARESTED MAPLES, THE 911 CALL'S CONTENTS, OTHER THAN THOSE COMMUNICATED TO VOLLMER AND FOX AT THE TIME OF THE ARREST THROUGH THE CAD REPORT, ARE IRRELEVANT.**

Maples argues that the 911 call, other than the information known to the Individual Defendants, is irrelevant.   See Motion to Dismiss at 2.   The Defendants contend that the 911 call is part of the totality of the circumstances, as it is "inextricably intertwined with the explanation as to why officers were directed to 1111 Major Ave. NW."   MIL Response at 4.   The Defendants are correct that the 911 call is part of the story of this case and is inextricably intertwined with the

explanation why they went to 1111 Major.  The reasonableness of an officer's use of force, however, depends on the information available to the officer at the time of the arrest.  See Weigel v. Broad, 544 F.3d at 1152 (noting that the reasonableness of a particular use of force is judged from the "perspective . . . of the information possessed by the [officers]")(quoting Anderson v. Creighton, 483 U.S. at 641).  Thus, only the information gleaned from the 911 call that the dispatch operator conveyed to the officers before they allegedly used excessive force is relevant.

The reasonableness of an officer's use of force is evaluated under an objective totality-of-the-circumstances approach, which requires consideration, from a reasonable officer's perspective, of three factors: (i) the severity of the crime at issue; (ii) whether the suspect poses an immediate threat to the safety of the officers or of others; and (iii) whether he is actively resisting arrest or attempting to evade arrest by flight.   See Weigel v. Broad, 544 F.3d at 1151-52 (quoting Graham v. Connor, 490 U.S. at 396).   Thus, while the factfinder must judge the reasonableness of the force that Vollmer and Fox used when arresting Maples in light of the circumstances, the circumstances are those circumstances as viewed from the perspective of information known to Vollmer and Fox at the time the arrest, and not the circumstances in hindsight as they actually existed.  See Tanner v. San Juan Cnty. Sheriff's Office, 864 F. Supp. 2d 1090, 1115 (D.N.M. 2012)(Browning, J.)("'[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'")(quoting Graham v. Connor, 490 U.S. at 396).  The 911 call is inextricably intertwined with the circumstances surrounding the arrest, but the content of the 911 call is another matter.  The 911 call's content, or S. Lane's statements in the 911 call, is relevant only to the reasonableness of Vollmer's and/or Fox's use of force to the extent that dispatch communicated

the content to Vollmer and Fox, thus informing their perspective when they arrived at 1111 Major.

Thus, dispatch's communication of the 911 call's content reflects the totality of the circumstances

to the extent that it provided the officers information whether the crime may be severe and whether

Maples posed a danger to the officers or public.   The 911 call, as S Lane communicated it to the

911 Operator, is thus not relevant in its entirety.   Cf. United States v. Rosetta, 127 F.3d 1110,

1997 WL 651027, at *2 (10th Cir. 1997)(unpublished table opinion)[2]("[T]he statement was not

hearsay to the extent it was offered to explain the officer's actions in investigating the case rather

than as substantive evidence of the rape.")(citing United States v. Wilson, 107 F.3d 774, 780 (10th

Cir. 1997); United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987)).   The statements in the

911 call are relevant only to the extent that the information gleaned from it, received by Vollmer

and/or Fox, caused Vollmer and Fox to believe that Maples presented a safety risk or to believe

that he was committing a severe crime, and whether that information would cause a reasonable

officer to believe the same.

    The Defendants' collective knowledge argument -- that the 911 call is admissible, because

the officers "are imputed with knowledge of the actual information conveyed by Ms. Lane because

the information from the call was shared via dispatch," MIL Response at 3 -- is not persuasive.

United States v. Shareef does not support admission of the 911 call, but rather supports finding that

---

[2] United States v. Rosetta is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See
10th Cir. R. 32.1(A), 28 U.S.C. ('Unpublished opinions are not precedential, but may be cited for
their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not
binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an
unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would
assist the court in its disposition, we allow a citation to that decision."   United States v. Austin,
426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Rosetta has
persuasive value with respect to a material issue, and will assist the Court in its disposition of this
memorandum opinion and order.

S. Lane's statements from the 911 call are not imputed to Vollmer or Fox, and thus not relevant to the officers' perspective of the totality of the circumstances.   Even if Vollmer and Fox may be imputed with knowledge "from the call [that] was shared via dispatch," MIL Response at 3, only information that was shared via "actual communication to the arresting officers" may be attributable to the officers, United States v. Shareef, 100 F.3d at 1503.   Thus, only the information that was actually communicated to Vollmer and Fox from the 911 Operator, and not the information as it was originally communicated to the 911 Operator, such as the information as communicated in the CAD report, is imputed to them.   United States v. Shareef therefore supports excluding S. Lane's statements in the 911 call.   The Court will thus exclude from trial the 911 call, whether presented via the transcript, a recording, or through testimony, but will allow evidence reflecting the information that Vollmer and Fox had at the time of arrest even if it originated in S. Lane's statements in the 911 call.

The Defendants also argue that the 911 is relevant to establish that the officers reasonably relied on the information.   While the argument is intriguing, it is ultimately not persuasive. Reasonable reliance is a phantom issue.   It is unlikely that the Individual Defendants acted unreasonably in relying on the contents of a 911 communicated to them.   The public knows that everything told to the police may not be true, but the police are expected to go to the scene and check the situation out.   Again, the issue is whether it was reasonable for the officers to rely on the CAD report, and not whether it was reasonable for them to rely on the excited call to 911 which they did not hear.

II.   **THE COURT WILL ADMIT EVIDENCE OF THE 911 CALL'S CONTENT TO REBUT MAPLES' CONTENTION THAT HE RESIDED AT 1111 MAJOR AT THE TIME THE OFFICERS ARRESTED HIM.**

Although the 911 call's contents are not probative whether the officers' force used in arresting Maples was unreasonable under the circumstances, S. Lane's statements to the 911 operator that Maples was not supposed to be at 1111 Major are probative whether he was there lawfully.   At the hearing, Maples asserted that he is worried about the 911 call coming in because there are untrue facts in the call about whether Maples resided at the property.   See Tr. at 10:21-24 (Court, Martinez).   The Defendants assert, however, that Maples' presence at the home was unlawful, and that S. Lane's statements in the 911 call support their position.   Thus, whether Maples was lawfully or properly at 1111 Major at the time the officers arrested him is an issue that may be relevant in the determination whether he was lawfully arrested or detained.

      **A.**     **BECAUSE THE LAWFULNESS OF MAPLES' PRESENCE AT 1111 MAJOR IS AT ISSUE, AND THE 911 CALL'S CONTENTS -- S. LANE'S STATEMENTS AT THE TIME SHE MADE THE 911 CALL -- ARE PROBATIVE WHETHER HE WAS LAWFULLY THERE AT THE SAME TIME, THE CALL'S CONTENTS ARE RELEVANT.**

Although the probative value of the 911 call's contents is limited, it does have some relevance.   Rule 401 provides that "[e]vidence is relevant if . . . it has <u>any</u> tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."   Fed. R. Evid. 401 (emphasis added).   The Court has thus noted that rule 401 presents a low threshold for evidence's admission at trial.   See <u>Coffey v. United States</u>, CIV 08-0588 JB/LFG, 2012 WL 1698289, at *4 (D.N.M. May 8, 2012)(Browning, J.)("Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'")(quoting Fed. R. Evid. 401 advisory committee's note).   Whereas the contents of the 911 call, other than those as communicated to the officers, contains facts unknown to the officers and are not of consequence in determining whether their use of force was reasonable, the

-24-

contents of the 911 call in which S. Lane represents that "[Maples is] not supposed to be here," 911 Call from Sarah, transcribed January 18, 2013, filed January 22, 2013 (Doc. 26-1)("911 Call Tr."), is probative whether he was lawfully on the property, which is a "fact [] of consequence in determining" whether the officers' unlawfully arrested or detained him.   Fed. R. Evid. 401(b).   If he was not legally present, this fact could support reasonable suspicion and/or probable cause to believe that he had committed or was committing a crime.   The contents of the 911 call are therefore relevant.

### B.   THE PREJUDICE TO MAPLES OF THE 911 CALL'S CONTENTS DOES NOT SUBSTANTIALLY OUTWEIGH THEIR PROBATIVE VALUE.

The Court's conclusion that the 911 call's contents are relevant to the case is not the end of the analysis whether they are admissible.   Although the nature of trials makes it so that almost all of an opposing party's evidence, by nature, is prejudicial, the Federal Rules of Evidence contemplate the exclusion of prejudicial relevant evidence where the danger of the evidence's prejudice substantially outweighs it probative value.   Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d at 638 (quoting United States v. Sides, 944 F.2d at 1563). The parties represent that S. Lane will testify at trial.   See Tr. at 10:10-18 (Court, Dalton).   On the one hand, because she will be able to testify, first-hand at trial, whether Maples was lawfully on the property, or that he was not supposed to be on the property on the day of the incident, receiving the same information from the 911 call appears cumulative, and the probative value of the 911

call's contents is thus limited.   On the other hand, because Maples will testify at trial that he was properly and lawfully at 1111 Major at the time of the incident, allowing the jury to see that S. Lane believed at the time of the incident, and continues to adhere to her belief that Maples was not properly on the property tends to make more probable that he was not lawfully there, and less probable that S. Lane came to this belief after the incident in preparation for trial.   The 911 call's contents are thus additional evidence probative whether Maples was lawfully at 1111 Major at the time of the incident and also probative to rebut any contention by Maples that S. Lane may have fabricated this belief recently.

The prejudice to Maples from the 911 call's contents is not substantial.   Just as the probative value of the statements is not much because of its cumulative nature, it also does not present much prejudice to Maples.   Because S. Lane will testify at trial that Maples was not supposed to be on the property, the jury will receive this information even if the call were not admitted.   Regardless whether the jury hears them from her on the stand, hears the 911 call, or reads the call's transcript, therefore, Maples will have to rebut her statements.   He will likely use the same evidence to rebut S. Lane's assertions whether they come from her testimony at trial, from the 911 call, or both.   The jury's listening to or reading S. Lane's assertions on the 911 call, however, prejudices Maples, as it rebuts any theory he might try to develop at trial that she fabricated this belief long after the day of the incident.   Under these circumstances, the evidence thus appears largely cumulative, of limited probative value to the Defendants, and also of limited prejudice to Maples.   The Tenth Circuit directs, however, that district courts in performing the 403 balancing test, and weighing the prejudice against the probative value of relevant evidence, "should give the evidence its maximum reasonable probative force and its minimum reasonable

prejudicial value." <u>Deters v. Equifax Credit Info. Servs., Inc.</u>, 202 F.3d at 1274.   Because the probative value and prejudice of the 911 call's contents are about equal, when given their maximum probative force and their minimum reasonable prejudicial value, the prejudicial value does not substantially outweigh their probative value. The Court will not, therefore, exclude the 911 call's contents under rule 403.

      **C.**     **BECAUSE S. LANE'S STATEMENTS DEMONSTRATE THAT THE EVENTS EXCITED HER, AND BECAUSE SHE WAS RELATING THE EVENTS TO THE 911 OPERATOR IN REAL TIME, THE STATEMENTS ARE ADMISSIBLE AS PRESENT SENSE IMPRESSIONS AND EXCITED UTTERANCES.**

At the hearing, Maples asserted that S. Lane's statements in the 911 Call Tr. are out-of-court statements.   Additionally, Maples pointed out that, because the Defendants intend to offer the statements in evidence to support their position that Maples was not supposed to be at 1111 Major, they are being offered for the truth of the matter asserted and are therefore hearsay. <u>See</u> Fed. R. Evid. 801(c)("'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement.").   "Hearsay testimony is generally inadmissible." <u>Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.</u>, 2013 WL 311846, at *13 (citing Fed. R. Evid. 802). The Federal Rules of Evidence, however, contemplate several exceptions to the rule against hearsay.   <u>See</u> Fed. R. Evid. 803 & 804.   The Court finds that S. Lane's statements in the 911 call fit within two of these exceptions: (i) present sense impressions, <u>see</u> Fed. R. Evid. 803(1); and (ii) excited utterances, <u>see</u> Fed. R. Evid. 803(2).   Finally, the Court concludes that it may allow the 911 call in evidence if the Defendants can meet the foundational requirement in rule 803(6)(D), because it is a record of regularly conducted activity.

-27-

**1.**   **S. Lane's Statements in the 911 Call Describing and Explaining Maples' Attempt to Gain Access to 1111 Major were Contemporaneous with the Event and Actually Perceived by S. Lane, and are Thus Admissible Hearsay.**

Rule 803(1) provides that "[a] statement describing an event or condition, made while or immediately after the declarant perceived it," is admissible hearsay.   Fed. R. Evid. 803(1).   Rule 803(1) -- also known as the present-sense-impression hearsay exception -- has three requirements: (i) the statement must describe or explain the event perceived; (ii) the declarant must have perceived the event described; and (iii) the description must be "substantially contemporaneous" with the event in question.   United States v. Mejia-Valez, 855 F. Supp. at 613.   First, S. Lane's statements here describe and explain her perceptions of Maples trying to allegedly unlawfully or wrongfully enter the residence at 1111 Major.   For example, when the 911 operator asks her "what's going on," she explains that "there's a guy that they had taken to the hospital here last night and he's not supposed to be here, and apparently he left the hospital 'cuz he's a nut case and he came back . . . ."   911 Call Tr. at 1:16-22 (911 Operator, S. Lane).   This statement is describing the event -- Maples' presence on the property -- and also explaining the event -- that she is calling 911 because Maples is not supposed to be there.   Similarly, S. Lane states: "He's a -- coming after my father . . . .   My dad is just trying to stay away from him.   And he's not supposed to be back here, and I think he left the hospital without . . . telling them."   911 Call Tr. at 2:2, 2:21-24 (S. Lane).   These statements are, again, describing the event by informing the 911 operator that Maples is on the property and coming after S. Lane's father, and explaining why the event prompted S. Lane to call 911 when she relates that the event scares her, because, according to her, Maples is not supposed to be at 1111 Major.   See 911 Call Tr. at 4:17-19 (S. Lane)("I can't see him.   That's why I'm getting all nervous, I can't see him anymore so I'm -- I can't even

leave.").   The statements thus meet rule 803(1)'s first requirement as they explain and describe the event: Maples' attempt to enter the residence at 1111 Major.   In regard to the second and third factors, it is apparent from S. Lane's statements to the 911 operator throughout the call that she perceived the event and her perceptions of the event were actually contemporaneous with the event.   See 911 Call Tr. at 7:12-22 (911 Operator, S. Lane)(Q: "Where's your father?" A: "He -- he's left out the gate so he wouldn't get attacked by this guy. . . .   And he's coming back in the house." Q: "Who came back in the house?" A: "Justin."); id. at 8:24 (S. Lane)("He went into the house").   Whereas the United States Court of Appeals for the Second Circuit has noted that "[t]he present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures," Brown v. Keane, 355 F.3d at 89, the contemporaneity of S. Lane's statements and her vivid descriptions and explanations of the events lead the Court to conclude that her statements describing and explaining the events were observations, not merely conjectures, and are thus admissible present sense impressions of the event.

> **2.      S. Lane's Statements in the 911 Call Relate to the Startling Event of Maples' Attempt to Gain Access to 1111 Major and Allegedly "Coming After" S. Lane's Father, and Were Made While S. Lane was Under the Stress of Excitement that Maples' Conduct Caused, and are Thus Admissible Hearsay as Excited Utterances.**

Rule 803(2) provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is admissible as an exception to the general rule against hearsay.   Fed. R. Evid. 803(2).   The Tenth Circuit has provided the following analysis for admitting statements under rule 803(2):

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the

-29-

event's excitement; and (3) a nexus between the content of the statement and the event.   [T]here is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance.   Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself.   There is no hard time limit that must be met under Rule 803; what is relevant is whether the declarant is still under the excitement of the startling event.

United States v. Smith, 606 F.3d at 1279 (internal citations and question marks omitted). The second and third requirements of the excited utterance analysis cannot reasonably be challenged under the circumstances surrounding S. Lane's 911 call: (i) S. Lane's statements were contemporaneous with the event, and there is thus no lapse of time here between the startling event to which S. Lane's statements relate and the statements; and (ii) there is a nexus between the statements' content and the event, as S. Lane's statements detail the event in real time, explain why the event prompted her to call 911, and describe Maples to the 911 operator.   Whether these statements are admissible as excited utterances turns, therefore, on whether the event to which they relate -- Maples' attempt to allegedly wrongfully gain access to 1111 Major and Maples' "coming after" her father, 911 Call Tr. at 7:12-22 (911 Operator, S. Lane), -- is "a startling event or condition," Fed. R. Evid. 803(1).

Professor Stephen A. Saltzburg explains that courts have been quite liberal in finding that an event is startling for purposes of rule 803(1):

> In most cases it is not seriously disputed that the event to which the excited utterance relates is in fact a startling event.   Occurrences such as accidents, fights, and physical crimes are generally deemed startling events.   However, admissibility under the Rule is not limited to events describing such clearly upsetting occurrences.   The Courts have been quite expansive in finding that an event triggered a startled statement is in fact a startling event.

4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Fed. Rules of Evid. Manual §803.02[3][b], at 803-18 (9th ed. 2006)(footnotes omitted).   Professor Saltzburg cites to David v.

-30-

<u>Pueblo Supermarket</u>, 740 F.2d 230 (3d Cir. 1984), as an "e.g." example to support his proposition that courts have been quite expansive in finding a startling event.   In <u>David v. Pueblo Supermarket</u>, the United States Court of Appeals for the Third Circuit held that a woman observing another woman, to whom she was not related, "who was eight months pregnant fall directly on her stomach . . . . would reasonably qualify as a 'startling occasion.'"   740 F.2d at 235. Another example to which Professor Saltzburg cites is <u>United States v. Beverly</u>, 369 F.3d 516 (6th Cir. 2006), in which the United States Court of Appeals for the Sixth Circuit held that "viewing the photograph of the individual that [the declarant] recognized as her husband committing a bank robbery was a startling event."   369 F.3d at 540.   In this case, S. Lane believed that Maples was not supposed to be at 1111 Major, he had left the hospital when he should not have, that she was "pretty sure" he was in the hospital because he was suicidal, <u>see</u> 911 Call Tr. at 5:14-16 (911 Operator, Hospital), and that she believed Maples was at the residence because he was coming after her father.   These events are at least as startling as observing an unrelated person, even a pregnant person, slip in a grocery store.   Additionally, multiple times during the telephone call S. Lane relates her concern that she could not see Maples or her father, or both, and that she believes her father "left out the gate so he wouldn't be attacked by [Maples]."   911 Call Tr. at 7:13-14 (S. Lane).   To believe one's father is in peril or being attacked by a person who has possibly just left without permission a hospital in which he was being watched and cared for because he threatened suicide, is a startling event.   The Court therefore concludes that the event to which S. Lane's statements in the 911 call relate -- Maples' attempt to gain entry into 1111 Major -- was sufficiently startling, and that her statements in the 911 call were made under the stress of the excitement which Maples' conduct caused.

-31-

**3.** **If the Defendants can Demonstrate Rule 803(6)(D)'s Foundational Requirement for the 911 Call, the Court will Admit the Recording of the Call in Evidence Under the Business Records Exception to the Rule Against Hearsay.**

Although S. Lane's statements in the 911 call are relevant and otherwise admissible hearsay, the Defendants represent that they intend to play the 911 call's recording at trial. Because the recording itself is an out-of-court statement, the recording must also fit into a hearsay exception. Cf. Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). The Court concludes that the recording is admissible in its entirety as a record of regularly conducted activity pursuant to rule 803(6).[3]

---

[3] Although the 911 Operator's questions are out-of-court statements, they are not hearsay, because the questions do not assert facts and are thus not offered for the truth of the matter asserted. Several United States Courts of Appeals have determined that questions that "merely seek[] answers and [have] . . . no factual content" do not come within the hearsay definition. United States v. Wright, 343 F.3d 849, 865 (6th Cir. 2003)("A question merely seeks answers and usually has no factual content."). See Lexington Ins. Co. v. W. Penn. Hosp., 423 F.3d 318, 330 (3d Cir. 2005)("Courts have held that questions and inquiries are generally not hearsay because the declarant does not have the requisite assertive intent, even if the question 'convey[s] an implicit message' or provides information about the declarant's assumptions or beliefs.")(quoting United States v. Long, 905 F.2d 1572, 1579-80 (D.C. Cir. 1990)); Quartararo v. Hanslmaier, 186 F.3d 91, 98 (2d Cir. 1999)("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement.")(quoting United States v. Oguns, 921 F.2d 442, 449 (2d Cir.1990)); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990)(holding that the questions "[w]here is the stuff," and "[w]here is the dog," "like most questions and inquiries, are not hearsay because they do not, and were not intended to, assert anything"). The Tenth Circuit rather focuses on whether the speaker intends the question as an assertion: "[T]he key to the definition [of a statement] is that nothing is an assertion unless intended to be one." United States v. Summers, 414 F.3d 1287, 1299 (10th Cir. 2005)(quoting Fed. R. Evid. 801 advisory notes); id. at 1300 (noting that Tenth Circuit precedent does not "foreclose the possibility that a declaration in the form of a question may nevertheless constitute an assertion within the meaning of Rule 801(a) and (c). Rather, both cases properly focus the inquiry on the declarant's intent."). The 911 Operator's statements were intended to gather information, were not intended as assertions, and did not contain any assertions of fact, whether implied or expressed. See, e.g., 911 Call Tr. at 1:1-2 (911 Operator)("Albuquerque 911 operator, 2064. Where's your emergency?"); id. at 2:20-21 (911

Rule 803(6) provides an exception to the rule against hearsay statements for records of regularly conducted activity, often referred to as the business records exception:

A record of an act, event, condition, opinion, or diagnosis if:

> **(A)** the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
>
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).   One of the foundational requirements for admissibility under the business records exception is that the necessary foundational elements in (A)-(C) is "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) . . . ."   Fed. R. Evid. 803(6)(D).   The Defendants have not demonstrated compliance with rule 902(11) or (12), have not produced a proper custodian's or other qualified witness' affidavit stating that the 911 recording meets rule 803(6)(A)-(C)'s requirements, and have not asserted that they intend to do so.   If, however, they do so at or before the trial, the Court will admit in evidence the 911 call's recording.

The parties have not provided the Court authority whether courts have admitted 911 call recordings or transcripts in the past under rule 803(6).   The extent of the briefing on the matter by

---

Operator)("Can you give me a description of [Maples]?").   The 911 Operator's questions are thus admissible non-hearsay statements.

both parties is limited to one paragraph at the end of the Defendants' reply brief: "[T]he 911 recordings are also admissible under the business records exception to the hearsay rule 803(b) [sic] as the 911 calls and radio transmissions are recorded and kept in the regular course of business by the Albuquerque Police Department Communications Center."   MIL Response at 6. Additionally, no party addressed the issue at the hearing.   The Court, however, has found case law, though none of it controlling, supporting the Defendants' assertion that the 911 call's recording is admissible as a business record under rule 803(6).   See United States v. Suggs, 266 F. App'x 258, 262 (4th Cir. 2008)(unpublished)("Suggs also contests the admission at the second trial of a tape of Rhonda West's 911 call. We conclude that the recording was admissible under Fed. R. Evid. 803(6) because it constitutes a record kept in the course of a regularly conducted business activity."); United States v. Chen Kuo, 10-CR-671 S-1 KAM, 2011 WL 145471, at *11 (E.D.N.Y. Jan. 18, 2011)("The court is inclined to agree in this case that the 911 recordings . . . would qualify as business records and would thus be admissible despite their hearsay status."); John v. Masterson, 08-0141 TLM, 2010 WL 1957876, at *1 (D. Conn. May 14, 2010)("The record of [911 telephone call statements] is admissible . . . as a 'business record' . . . ."); United States v. Harper, No. 05-CR-6068L, 2009 WL 140125, at *2 (W.D.N.Y. Jan. 20, 2009)("There does not seem to be any dispute here that the [911 call report] itself meets the requirements for admission as a business record . . . ."). Cf. United States v. Sallins, 993 F.2d 344, 347-48 & n.4 (3d Cir. 1993)(discussing the admissibility of the 911 caller's statements, stating: "We assume without deciding that the record itself would satisfy Rule 803(8)(B)"). In Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir. 1995), for example, the United States Court of Appeals for the Ninth Circuit held that "[h]earsay statements on a 911 tape can be admitted into evidence as either a 'public

record,' Fed. R. Evid. 803(8)(B), or a 'business record,' Fed. R. Evid. 803(6)."   45 F.3d at 1372.

The Ninth Circuit nevertheless affirmed the district court's refusal to admit the 911 call, in which

the caller described the police beating of the plaintiff, reasoning that the caller's statements were

hearsay within hearsay, and the plaintiff failed to show that they fell within either the present sense

impression or excited utterance exceptions to the rule against hearsay:

> Certainly, a statement by a 911 caller who is witnessing the violent arrest of a
> suspect by the police could qualify under either exception.   The district court,
> however, properly refused to admit the Estep Statement because of a lack of
> foundation to show that it satisfied the requirements for admission as a present
> sense impression or an excited utterance.

45 F.3d at 1372.   In United States v. Chen Kuo, although the Honorable Kiyo A. Matsumoto,

United States District Judge, concluded that the 911 call recording was admissible as a business

record, she denied allowing it into evidence until the parties complied with rule 803(6)(D)'s

foundational requirement:

> The court is inclined to agree in this case that the 911 recordings and "sprint report"
> would qualify as business records and would thus be admissible despite their
> hearsay status. However, the government here has failed to lay the proper
> foundation for admission of these reports, as clearly stated in both the rule itself and
> the case law. The government can, at trial, present evidence, through stipulation or
> otherwise, that the custodian of the 911 recordings and "sprint reports" is able to lay
> the proper foundation for their admission. Only then can the 911 recordings and
> "sprint report" be admissible under the business record exception to the hearsay
> rule.

2011 WL 145471, at *11.   Here, the Court agrees with precedent case law that the 911 call

recording appears to fit within 803(6)'s hearsay exception.   As in United States v. Chen Kuo,

however, the Defendants have not shown that rule 803(6)(D)'s foundational requirement is met.

Only when the Defendants lay the proper foundation therefore will the Court allow the recording

itself admitting in evidence.

In conclusion, the 911 call's contents, other than the information in the CAD report that the Individual Defendants received before Maples' arrest, is irrelevant whether the officers' arrest and the force used in arresting him was reasonable.  S. Lane's statements in the 911 call about Maples' unlawful or wrongful presence at 1111 Major is probative to rebut Maples' contention that he was lawfully and properly on the property at the time the officers arrested him. Additionally, because the same information will be admitted through S. Lane's trial testimony, and Maples' trial testimony will thus have to rebut the assertions regardless, the prejudice to him from the 911 call's contents does not substantially outweigh its probative value.  Because S. Lane's relevant statements in the 911 call are admissible hearsay as both present-sense impressions and excited utterances, the Court will admit S. Lane's statements about whether Maples was supposed to be at 1111 Major when the officers arrested him. Because the Defendants have not yet laid the proper foundation to admit the 911 call's recording under rule 803(6), however, the Court will not, presently, admit the recording in evidence.

**IT IS ORDERED** that Plaintiff's Motion in Limine No. 3: Exclusion of Testimony and Evidence Regarding Contents of 911 Call Other Than the Information Known to the Defendant Police Officers, filed February 28, 2013 (Doc. 34), is granted in part and denied in part.  The Court will admit S. Lane's statements about whether Maples was supposed to be at 1111 Major NW when the officers arrested him.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Anna C. Martinez

Albert L. Hutchinson, Jr.
Aequitas Law, LLC
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

David Tourek
   City Attorney
Stephanie M. Griffin
Kristin J. Dalton
   Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

     *Attorneys for the Defendants*