# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUSTIN MAPLES,

      Plaintiff,

vs.                                                                    No. CIV 12-0294 JB/RHS

MATTHEW VOLLMER,
an Officer of the Albuquerque
Police Department, Individually,

DAVID FOX, an Officer of the Albuquerque
Police Department, Individually,

CITY OF ALBUQUERQUE,
a municipality organized under the
laws of the State of New Mexico,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion in Limine No. 4:
Exclusion of Testimony and Evidence Regarding Plaintiff's Prior Criminal History, filed February
28, 2013 (Doc. 35)("Motion in Limine").  The Court held a hearing on March 5, 2013.  The
primary issue is whether the Court should prohibit the defendants from inquiring into Plaintiff
Justin Maples' criminal history at the trial.  The Court will grant in part and deny in part the
Motion in Limine.   That Maples has been arrested and handcuffed in the past, and the number of
times he has been handcuffed and arrested, is relevant to his assertion that he did not know he was
supposed to stop when Defendants Matthew Vollmer and David Fox (the "Individual
Defendants") ordered him to do so, and is also relevant to his assertion that he ran because his
experiences in the past caused him to believe that the officers would not listen to his explanation
why Sarah Lane called police.  As all of these past encounters with law enforcement involved

Albuquerque Police ("APD") officers, the number of incidents and that it was APD who arrested him is also admissible to show his bias against the Defendants in this case.   Additionally, whether Maples alleged that officers used excessive force in the past is relevant to whether and why he contends Fox's force was excessive. Because Vollmer was previously called to 1111 Major Avenue Northwest, Albuquerque, New Mexico, the house at which the underlying incident took place, and encountered Maples upon that call, evidence of Vollmer's knowledge about Maples' criminal conduct is relevant to and highly probative of Maples' Fourth Amendment claims, and is thus admissible.   Substantial evidence about the nature of his past arrests, however, becomes unfairly prejudicial to Maples.   The Court will thus allow Vollmer to testify as to his knowledge about Maples' criminal history derived from encounters with Maples, and will allow the Defendants to inquire into whether Maples has been handcuffed in the past, whether he has been arrested in the past, the number of times that he has been arrested, whether it was APD that executed those arrests, and whether he has alleged that officers used excessive force in any of those past incidents, but will allow no further discussion of the nature of Maples' past arrests.   If, however, Maples opens the door for admission of further relevant information about his criminal history by adhering to his decision to pursue emotional-distress damages at trial, the Court will allow the Defendants to bring out the circumstances in two probative prior incidents so that the Defendants can use those incidents to provide context in rebutting Maples' alleged emotional-distress damages.

## FACTUAL BACKGROUND

On January 26, 2010, Vollmer and Fox, APD officers, were dispatched to 1111 Major, Maples' residence, because of a 911 call made by Sarah Lane, the daughter of Maples'

then-boyfriend.   See Complaint for Damages, Declaratory and Injunctive Relief and Petition for Writ of Mandamus ¶ 12, at 3, filed in state court on January 26, 2012, filed in federal court March 22, 2012 (Doc. 1-1)("Complaint").   Maples was standing in his front yard when the officers arrived and tried to walk away from them.   See id. ¶¶ 13-14, at 3.   Vollmer and Fox chased after Maples, and Maples then fled from the officers.   See id. ¶¶ 17-18, at 3.   Vollmer and/or Fox tackled Maples when they caught up to him.   See id. ¶ 19, at 3.   Maples alleges that Vollmer and Fox used "excessive and unnecessary force" against him, id. ¶ 20, at 4, and "caused him to suffer damages," id. ¶ 21, at 7.   Vollmer placed Maples in handcuffs, arrested him, transported him to the prisoner transport center, and booked him.   See Affidavit of Matthew Vollmer ¶¶ 16-17, at 3, filed December 20, 2012 (Doc. 19-1).

APD officers had arrested Maples at least fifteen times before this incident.   See Defendants' Response to Plaintiff's Motion in Limine No. 4: Exclusion of Testimony and Evidence Regarding Plaintiff's Prior Criminal History, filed March 4, 2013 (Doc. 53)("MIL Response").   At the time of Maples' arrest, there was a hazard alert placed on the 911 call Computer-Aided Dispatch ("CAD") report, indicating to Vollmer and Fox that there had been prior police response to 1111 Major for violence and/or suicidal behavior.   See Premise Information for 1111 Major Av NW, Alb at 1, filed March 4, 2013 (Doc. 53-1).   Also, Vollmer had been dispatched to 1111 Major once before the January 26, 2010, incident, in response to allegations that Maples was causing a disturbance at the residence, including exhibiting violent and/or suicidal behavior.   See APD Report, Case No. 07-106432 at 1, filed March 4, 2013 (Doc. 53-2).   In addition, Maples has had numerous encounters with police, including six incidents where he allegedly fled from police officers, and one incident in which he alleged police brutality.

See APD Report No. 04-91362 at 1, filed March 4, 2013 (Doc. 53-3); APD Report No. 04-109248 at 1, filed March 4, 2013 (Doc. 53-5); APD Report No. 04-130413 at 1, filed March 4, 2013 (Doc. 53-6); APD Report No. 05-44552 at 1, filed March 4, 2013 (Doc. 53-7); APD Report No. 05-38158 at 1, filed March 4, 2013 (Doc. 53-8); APD Report No. 05-80526 at 1, filed March 4, 2013 (Doc. 53-9); APD Report No. 05-88170 at 1, filed March 4, 2013 (Doc. 53-10); APD Report No. 05-118271 at 1, filed March 4, 2013 (Doc. 53-11); APD Report No. 06-51814 at 1, filed March 4, 2013 (Doc. 53-12); APD Report No. 07-94444 at 1, filed March 4, 2013 (Doc. 53-13); APD Report No. 08-35438 at 1, filed March 4, 2013 (Doc. 53-14), APD Report No. 090062171 at 1, filed March 4, 2013 (Doc. 53-15), APD Report No. 090116927 at 1, filed March 4, 2013 (Doc. 53-16), APD Report No. 090116957 at 1, filed March 4, 2013 (Doc. 53-17), APD Report No. 100020847 at 1, filed March 4, 2013 (Doc. 53-18); APD Report No. 100041244 at 1, filed March 4, 2013 (Doc. 53-19).

## PROCEDURAL BACKGROUND

Maples instituted this lawsuit in state court on January 26, 2012, and the Defendants removed the case to this federal court on March, 22, 2012.  See Notice of Removal (Doc. 1). Maples alleges that Defendants Vollmer, Fox, and the City of Albuquerque violated his constitutional rights by using excessive force in arresting him on January 26, 2010, at 1111 Major, and falsely imprisoning him following his arrest.  Maples states that the "City of Albuquerque is sued under 42 U.S.C. § 1983 for damages under a theory of municipal liability for failure to adequately train [sic] supervise Defendant Matthew Vollmer and/or Defendant D. Fox and for its customs, policies, and/or practices."  Complaint ¶ 3, at 2.  Maples also sues the City of Albuquerque "under the New Mexico Tort Claims Act[, N.M.S.A. 1978, §§ 41-4-1 to -30

("NMTCA"),] . . . for damages under a theory of *respondeat superior*."   Complaint ¶ 4, at 2.
Maples states that "[t]his is a civil action for monetary damages, arising from Plaintiff's claims
that he was illegally arrested, illegally imprisoned, suffered excessive force, and was otherwise
wronged by Defendants Matthew Vollmer and D. Fox . . . ."   Complaint ¶ 10, at 3.   Maples
alleges nine counts against the City of Albuquerque pursuant to the NMTCA and 42 U.S.C. §
1983.  See Complaint ¶¶ 22-72, at 4-11.

  On February 28, 2013, Maples filed this Motion in Limine, asking that, pursuant to rules
402, 403, 404, 608, and 609 of the Federal Rules of Evidence, "the Defendants and their witnesses
be prohibited by Court Order from disclosing to the jury, directly or indirectly, any evidence,
argument, opinion, or other testimony concerning, Plaintiff's prior criminal history."   Motion in
Limine at 1.   Maples anticipates that the Defendants will seek to introduce testimony about his
criminal history, which includes "arrests arising out of domestic dispute and driving while
intoxicated."   Motion in Limine at 1.   According to Maples he has not been convicted of a felony
or a crime of dishonesty.  See Motion in Limine at 1-2.   Maples asserts that he believes the
Defendants will likely introduce this evidence of his criminal history to impeach him and to show
that his emotional damages are limited, because he has previously been arrested and incarcerated.
See Motion in Limine at 2.   He contends that the danger of unfair prejudice to him that
introduction of his criminal history has substantially outweighs any probative value this evidence
has on these two issues.  See Motion in Limine at 3.   Maples argues that, with regard to the issue
whether his prior arrests lessen his emotional distress damages claims, the arrest here is
substantially more troubling, because he was arrested from the home in which he resided.  See
Motion in Limine at 4 (citing Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, 2009

WL 1325440 (D.N.M. Apr. 6, 2009)(Browning, J.)).   He thus asks the Court to exclude "all evidence, testimony, or argument regarding [his] criminal history."   Motion in Limine at 5.

On March 4, 2013, the Defendants filed their MIL Response.   The Defendants assert that Maples' prior criminal convictions and his past encounters with police not ending in conviction are "probative of (1) Defendants' defense against Plaintiff's Fourth Amendment claims; (2) Plaintiff's bias against law enforcement; (3) Plaintiff's lack of credibility; and (4) Plaintiff's claim for damages."   MIL Response at 1-2.   The Defendants assert that the evidence is also admissible under rules 404(b) and 406.   The Defendants assert that Maples' past encounters with law enforcement at 1111 Major, even if they did not result in criminal convictions, are relevant, because they provide context for the Individual Defendants' use of force arresting Maples.   See MIL Response at 2.   The Defendants assert that his previous police encounters at 1111 Major included battery on a household member, of which the Computer-aided Dispatch ("CAD") report gave the Individual Defendants notice, and is thus relevant to their beliefs about the danger Maples' resistance to their arrest presented them.   See MIL Response at 3-4.

The Defendants argue that, because Maples has a well-documented history of over fifteen past encounters or arrests with APD officers specifically, his past arrests are probative of his bias against APD.   See MIL Response at 4.   The Defendants assert that these previous encounters with APD provide him with a bias and motive to lie in retaliation for the numerous times that they have handcuffed him in the past, which, they contend, is permissible ground for impeachment. See MIL Response at 5 (citing United States v. Abel, 469 U.S. 45 (1989)).   The Defendants also argue that Maples' past arrests, convictions, and police encounters are admissible under rule 404, because they demonstrate his knowledge that running from police provides them probable cause

-6-

for arrest.   See MIL Response at 6.   They point out that, on August 6, 2004, Maples attempted to hide from police in a tree, and was subsequently arrested for evading arrest and refusing to cooperate with police officers.   The incident, they contend, shows that Maples had knowledge that refusing to obey Vollmer's direction to stop and talk with them provided probable cause to arrest him, and that incident is therefore admissible.   See MIL Response at 6.   The Defendants refer the Court to Perrin v. Anderson, 784 F.2d 1040 (10th Cir. 1986), to support their argument that the evidence relating to Maples' prior arrests "may be proven through reputation or opinion testimony or through evidence of habit."   MIL Response at 6-7 (citing Fed. R. Evid. 405(a) and 506).   They assert that Maples' habit is to evade arrest, or, alternatively, that it is his "modus operandi and common scheme and plan in dealing with police officers."   MIL Response at 7.

The Defendants argue that Maples' past encounters with police are probative whether, after over fifteen past incidents with police in which he was handcuffed, he suffered emotional distress in this incident to the extent he alleges.   See MIL Response at 8.   They contend:

> Evidence of his past arrests and incarcerations are relevant and admissible because a person who has never been arrested or incarcerated before would more likely be emotionally distressed if falsely arrested or allegedly so, than a person who has been arrested on at least fifteen (15) prior occasions, like Plaintiff. The same argument follows for Plaintiff's past incarcerations. Evidence of Plaintiff's past arrests is not for the purpose of showing that Plaintiff is a bad person, but rather for the purpose of allowing the jury to determine the extent of emotional distress damages that Plaintiff incurred based on Defendants' allegedly bad conduct.

MIL response at 9.   The Defendants ask, therefore, that the Court deny Maples' Motion in Limine.

At the March 5, 2013, hearing on the motions in limine, the Court noted that the probative value of the past police encounters of which the Individual Defendants were aware was likely substantial, but that much more evidence about Maples' various police encounters would likely

-7-

become dangerously prejudicial.   See Transcript of Hearing at 13:9-20 (taken Mar. 5, 2013)(Court) ("Tr.").[1]   The Court asked, if it let in the information that the Individual Officers knew about Maples' past police encounters, and also past police encounters of which the Defendants' other APD officer witnesses were aware, what other evidence about Maples' past police encounters the Defendants need admitted.   See Tr. at 14:5-9 (Court).   The Defendants stated that the number of police encounters that took place at 1111 Major is probative, as it shows that the officers were familiar with the address, and the fact that Maples was previously arrested there for an incident involving violence is particularly probative, because it caused a hazard alert to be sent to Vollmer and Fox when dispatched to the scene.   See Tr. at 14:10-20 (Dalton, Court). The Defendants explained that, when officers are dispatched for a 911 call to an address at which there have been previous calls for domestic violence or suicide threats, the officers are alerted to the dangerous nature of the residence by a hazard alert which appears on the CAD report and instructs the officers to approach with caution.   See Tr. at 14:22-25 (Dalton, Court).   The Court replied that this information was likely probative of the officers' beliefs when approaching the scene, and thus relevant to both reasonable suspicion and their use of force, and so the Court would likely allow the evidence about the CAD report's hazard alert and allow the officers to explain what they believed the hazard represented. See Tr. at 15:2-5 (Court).   The Court then asked the Defendants what other information about Maples' criminal background they thought it should allow into evidence.   See Tr. at 15:5-6 (Court).   The Defendants responded that Vollmer's previous encounter with Maples may provide Maples bias in this lawsuit against Vollmer, and also is probative of his motives in bringing the suit against Vollmer, and that evidence about that

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcripts may contain slightly different page and/or line numbers.

previous encounter is therefore also admissible.   See Tr. at 15:7-10 (Dalton).   The Court responded that, because Vollmer's previous encounter necessarily plays into the circumstances surrounding Maples' arrest, it is probative for purposes of analyzing whether Vollmer's conduct arresting Maples was reasonable under the Fourth Amendment, and is thus admissible.   See Tr. at 15:15-17 (Court).   The Court asked if there is anything else from Maples' criminal history, in light of the substantial evidence that the Court concludes is admissible, that the Defendants contend is admissible.   See Tr. at 15:25-16:1 (Court).   The Defendants asserted in response that they believe all evidence about his prior encounters, including the police reports and arrest records, "go[] to the plaintiff's credibility, his bias, [] his motive against police officers . . . . [and] his claim for damages as well."   Tr. at 16:11-15 (Dalton).

The Court asked the Defendants to explain what information from Maples' criminal history is probative with regard to his credibility.   See Tr. at 16:16-18 (Court).   They responded that, because Maples has asserted throughout litigation of his case that he lacks memory about the circumstances of many of his past police encounters, and that this particular incident sticks out above the rest, bringing out on cross-examination evidence about the nature and circumstances of his past police encounters attacks the credibility of this assertion.   See Tr. at 16:19-24 (Dalton). The Court asked the Defendants if their intent is to attack Maples' credibility on cross-examination by asking him how, in light of his fifteen prior arrests, he remembers specifically the details of the underlying incident in this case so well.   See Tr. at 17:13-18 (Court).   The Defendants responded that the Court is correct, and that they believe the number of arrests makes less credible his alleged lack of memory in the past and vivid memory here.   See Tr. at 17:23-18:2 (Dalton, Court).   The Court then asked what evidence, in addition to getting in the number of Maples' arrests, is

probative of his bias.   See Tr. at 18:4-5 (Court).   The Defendants responded that his prior history

of fleeing a number of times that he encountered police officers is probative of his bias, and is also

relevant, because it gave the officers probable cause to arrest Maples pursuant to N.M.S.A. 1978, §

30-22-1.   See Tr. at 18:6-7 (Dalton).   The Court inquired whether asserting that, because Maples

has fled in the past, he fled this time is classic propensity-type evidence, which rule 404(b)

excludes from evidence. See Tr. at 18:8-13 (Court).   The Defendants responded that rule 404(b)

does not exclude evidence of his prior flights from police officers, because the evidence is proof of

Maples' modus operandi, and the evidence is also admissible as evidence of habit, as it shows

Maples meets a "situation with a certain kind of reflect: Mr. Maples has shown in the past that one

of his reflexes to law enforcement involvement at 1111 [M]ajor is to flee."   Tr. at 18:15-19

(Dalton).   In response to the Court's inquiry whether Vollmer has personal knowledge about

Maples' flight from officers, the Defendants asserted that, in the previous incident in which

Vollmer was dispatched to 1111 Major, he made contact with Maples "away from the residence . .

. [and] transported him back to the residence, so to a certain extent that could be considered fleeing

at the time that law enforcement was called to the home."   Tr. at 18:20-19:2 (Court, Dalton).   The

Court asked in how many incidents, out of Maples' fifteen total arrests, was there evidence that he

fled from police.   See Tr. at 19:3-4 (Court).   The Defendants responded that six out of the fifteen

past incidents evidence that Maples attempted to flee, that there are other incidents in which

Maples was uncooperative with police, and one incident in which Maples alleged police brutality

after he "apparently rammed his own head into the police vehicle," but conceded that none of these

additional incidents involved Vollmer.   Tr. at 19:10-15 (Court, Dalton).   The Court responded

that Maples' conduct in these past incidents appears too inconsistent to establish evidence that he

has a habit of, or his modus operandi is to flee from law enforcement, and that getting into the nature of his prior police encounters, therefore, appears to be admitting improper character evidence under rule 404(b).   See Tr. at 19:16-22 (Court).   The Court asked Maples if he would object to the Court allowing the officers to testify about what they knew about Maples and about 1111 Major when approaching the scene on the day of the incident, and how that knowledge factored into their conduct at the scene, and to allowing the Defendants to elicit the number of Maples' past police encounters, past arrests, and past times in which he was handcuffed, but not allowing the specific circumstances of Maples' prior encounters to come into evidence.   See Tr. at 19:23-20:12 (Court).   Maples responded: "[I] would agree to that, Your Honor."   Tr. at 20:13 (Martinez).   The Court asked the Defendants whether they would object to the Court's proposal, with the caveat that Maples must be candid and truthful in his responses.   See Tr. at 20:14-25 (Court, Dalton).   The Defendants stated that they agreed with the Court's proposal and would not object to it: "Your Honor, what you're suggesting is okay with the defense, however, depending on what Mr. Maples says on the stand we may want to go into specifics of some of the [] prior instances, but would agree to approach the bench before doing so."   Tr. at 21:1-5 (Dalton).

The Court asked the Defendants what particularly in Maples' trial testimony they believed might prompt their request to inquire further about the specifics of some of the past incidents.   See Tr. at 21:6-8 (Court).   The Defendants responded that, because Maples has asserted in discovery that he believed he was free to walk away, if he testifies to that belief on the stand, showing that he has been arrested fifteen times before, and inquiring whether, in any of those incidents he was arrested pursuant to N.M.S.A 1978, § 30-22-1[2] specifically, because he fled from the officers, is

---

[2] Section 30-22-1 of the New Mexico Statutes Annotated makes criminal resisting,

-11-

proper impeachment evidence.   See Tr. at 21:8-13 (Dalton).   The Court asked Maples whether he intends to testify at trial that he believes he was free to walk away from Vollmer when Vollmer arrived on the scene and directed Maples to come and talk with him.   See Tr. at 21:14-16 (Court). Maples responded that he intends to testify that he believed he was free to walk away, because he had not done anything criminal before the 911 call.   See Tr. at 22:4-6 (Martinez).   In response to the Court's inquiry what the Defendants intend to do if Maples so testifies, the Defendants replied that Maples' testimony that he believed he was free to walk away:

> [T]hat opens the door to prior incidents, because he had fled in the past and he had been basically searched out, . . . and ordered to speak with police about the incidents. . . . [H]e opens the door to . . . testimony that he knew that if he did attempt to flee or walk away from police they would come looking for him.

_____

evading or obstructing an officer in the lawful pursuit of the officer's duties:

> Resisting, evading or obstructing an officer consists of:
>
> A. knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ or process;
>
> B. intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;
>
> C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle; or
>
> D. resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.
>
> Whoever commits resisting, evading or obstructing an officer is guilty of a misdemeanor.

N.M.S.A. 1978, § 30-22-1.

Tr. at 22:9-17 (Dalton).   Maples stated that he fled in this case out of his fear of Vollmer and his

fear of APD generally, not because he had done something wrong; whereas, in the two incidences

in which he was arrested because he fled from police, he knew he had done something wrong.

See Tr. at 22:19-25 (Martinez).   The Court responded that, if the testimony at trial plays out as the

parties seem to agree that it will, and Maples testifies that he believed he was free to walk away

from Vollmer because he had not done anything wrong, the Court will allow the Defendants to

bring out testimony about the two past incidents in which he was arrested for fleeing to contradict

his asserted belief.   See Tr. at 23:2-8 (Court).   Maples stated that he agreed with the Court's

proposal.   See Tr. at 23:10 (Martinez).   The Defendants argued that they still believe the Court

should grant them more liberty to inquire about the circumstances of Maples' other arrests,

because it is probative of the extent of his emotional distress damages.   See Tr. at 25:2-5 (Dalton).

The Court asked how, after getting in the number of times Maples was arrested in the past,

and likely specifics of at least two of those incidents, more information about Maples' criminal

history would be admissible for purposes of establishing his emotional distress damages.   See Tr.

at 25:6-8 (Court).   The Defendants responded that Maples asserts that this arrest is the "worst

thin[g] that ever happened to him," and that two of his past arrests, one in which he was chased

down by a K-9 officer, and one in which he alleged police brutality, are particularly probative to

contrast why this incident is so much worse than those two.   See Tr. at 25:9-15 (Dalton).   The

Court asked whether Maples disagreed that those two incidents are probative to show the extent of

his emotional distress damages, to which Maples responded he worries he will then have to rebut

the facts of those cases, and their admission into evidence will thus lead to a "mini trial" within the

trial.   Tr. at 25:24-26:1 (Martinez).   The Court asked whether Maples would be forced to rebut

-13-

the facts of those incidents, or whether they actually fit into his theory that he fled from Vollmer and Fox in this case because of the fear that arose from prior APD encounters, including these two incidences.   See Tr. at 26:2-9 (Court, Martinez).   Maples responded that the allegation that Maples rammed his head against the police car in the incident in which he alleged police brutality does not have probative value for emotional distress damages and is prejudicial, as he will have to rebut that assertion.   See Tr. at 26:14-17 (Martinez).   The Court inquired of the Defendants whether they were trying to get that part of the incident into evidence.   See Tr. at 26:21 (Court). They responded that they were trying to introduce that part of the past incident, because at the end of the incident, when he stopped banging his head against the car, he immediately alleged police brutality.   See Tr. at 27:5-9 (Court).   They added that evidence that this past incident goes to his motive in alleging excessive force in this case, and his motive in bringing this lawsuit against the Defendants.   See Tr. at 27:12-20 (Dalton).   The Court responded that it believes his past allegation of police brutality is probative of his motive in bringing the lawsuit, and also probative of his contention that he fled APD because he was afraid, but is inclined to exclude evidence that he rammed his head against the window.   See Tr. at 27:21-24 (Court).

## LAW REGARDING RULE 403

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401.   "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."   Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).

Rule 403 provides: "The court may exclude relevant evidence if its probative value is

-14-

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M.

Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."   United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING APPLICATION OF RULE 404

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."  Fed. R. Evid. 404(a).   "This rule is necessary because of the high degree of prejudice that inheres in character evidence.   In most instances, [the United States Court of Appeals for the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait."   Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."   Fed. R. Evid. 404(b).   The same evidence, however, may be admissible for other purposes.   Permissible

purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. See Fed. R. Evid. 404(b). The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of the defendant's character. See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991). In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible

purpose for which such evidence is offered and the inferences to be drawn therefrom."   United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).   "[A] broad statement merely invoking or restating Rule 404(b) will not suffice."   United States v. Youts, 229 F.3d at 1317.   "Uncharged, unrelated crimes or bad acts may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time."   United States v. Valencia-Montoya, No. CR 11-2990 JB, slip op. at 11 (D.N.M. Sept. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996).   See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(per curium)(holding that the admission of evidence of prior arrests is proper for purposes of determining whether the plaintiff running from the police officers was result of a mistake, or to avoid arrest).

## RELEVANT LAW REGARDING RULE 406 EVIDENCE

Under rule 406, a party may present evidence of a person's "habit" for the purpose of proving that the person or organization acted in conformity with that habit.   See Fed. R. Evid. 406. While evidence of past wrongs or acts is inadmissible to establish a trait of character and "show action in conformity therewith," Fed. R. Evid. 404(b), but that same evidence may be admissible pursuant to rule 406 if it tends to establish a "habit" and is used "to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice," Fed. R. Evid. 406.   This distinction is not, however, merely terminological. "Habit 'describes one's regular response to a repeated specific situation.'" Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d 1265, 1269 (D.N.M. 2010)(Browning, J.)(quoting E. Cleary,

McCormick on Evidence § 162, at 340 (6th ed.)). Examples of habits include "going down a particular stairway two stairs at a time, or . . . giving the hand-signal for a left turn, or . . . alighting from railway cars while they are moving." E. Cleary, McCormick on Evidence § 162, at 340. "The doing of the habitual acts may become semi-automatic." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d at 1269. See Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986)(defining habit as "a regular practice of meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances.")(citing Frase v. Henry, 444 F.2d 1228, 1232 (10th Cir. 1971)).

## LAW REGARDING RULE 608 EVIDENCE

"Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness."   Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.); United States v. Huerta-Rodriguez, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.).   Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.   But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).   The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence without ever proffering evidence of a good character for truthfulness.   See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer as to whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and

called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").   To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."   United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by, United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

> Rule 608(b) provides the rule for admission of specific instances of conduct:
>
> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
>> **(1)** the witness; or
>>
>> **(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).   "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished). [3]

---

[3] United States v. Beltran-Garcia is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Beltran-Garcia has persuasive value with respect to a material issue, and will assist the Court in

"Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."   United States v. Beltran-Garcia, 338 at 770.   The United States Court of Appeals for the District of Columbia Circuit has noted:

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note to 2003 amendment. The rule precluding the

> admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue.

United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 C. Wright & V. Gold, Federal Practice and Procedure § 5096 at 546-47 (1990)).   This doctrine, "known as 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible."   United States v. Crockett, 435 F.3d at 1313 (citing Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997)).   See United States v. Cerno,

---

its disposition of this memorandum opinion and order.

529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.").[4]

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." See Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985).  Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct, or during a later direct examination.  See United States v. Embry, 452 F. App'x 826, 835 (10th Cir. 2011)(unpublished)(noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct.").  When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses.  See United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

It is "permissible impeachment to expose a witness's bias."  United States v. Baldridge,

---

[4] Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally."  28 C. Wright & V. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011).  As a result of the 2003 amendment, Professors Wright and Gold confirm, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness."  28 C. Wright & V. Gold, supra § 6117, at 14 (supp. 2011).

559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)).

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. at 52.   Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence."   Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.).   The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party."  United States v. Baldridge, 559 U.S. F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).[5]

## LAW REGARDING UNLAWFUL ARREST

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)).   "The law . . . is unambiguous: a government official must have probable cause

---

[5] Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias." Black's Law Dictionary 1229 (J. Garner ed., 9th ed. 2009).  See New Oxford American Dictionary 1378 (3d ed., 2010) ("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility. . . ."). Bias is defined as: "Inclination; prejudice; predilection." Black's Law Dictionary 183.  Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice."  E.g., Nevada Comm'n on Ethics v. Carrigan, 131 S. Ct. 2343, 2349 (2011)(quoting 28 U.S.C. § 144, which makes "any 'personal bias or prejudice' a basis for recusal."). Bias is associated more with an informed reason for favoring a person and prejudice with an informed hostility toward a person.  Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows.  The terms have thus apparently lost any distinction.

to arrest an individual." Cortez v. McCauley, 478 F.3d 1108, 1117 (10th Cir. 2007)(citing

Tennessee v. Garner, 471 U.S. at 7).    See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)("[T]he

Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to

believe that the suspect has committed or is committing an offense.").   "Probable cause exists if

facts and circumstances within the arresting officer's knowledge and of which he or she had

reasonably trustworthy information are sufficient to lead a prudent person to believe that the

arrestee has committed or is committing an offense."   Keylon v. City of Albuquerque, 535 F.3d

1210, 1216 (10th Cir. 2008)(quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)).   The

Supreme Court has stated that the existence of probable cause for an arrest depends on whether,

based on historical facts leading up to the arrest, an objectively reasonable police officer would

find probable cause:

> The principal components of a determination of reasonable suspicion or probable
> cause will be the events which occurred leading up to the stop or search, and then
> the decision whether these historical facts, viewed from the standpoint of an
> objectively reasonable police officer, amount to reasonable suspicion or to
> probable cause. The first part of the analysis involves only a determination of
> historical facts, but the second is a mixed question of law and fact: "[T]he historical
> facts are admitted or established, the rule of law is undisputed, and the issue is
> whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to
> put it another way, whether the rule of law as applied to the established facts is or is
> not violated."

Ornelas v. United States, 517 U.S. 690, 696-97 (1996)(quoting Pullman-Standard v. Swint, 456

U.S. 273, 289 n.19 (1982))(alterations in original).

## RELEVANT LAW REGARDING EXCESSIVE FORCE

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for

objective reasonableness based upon the information the officers had when the conduct occurred."

Saucier v. Katz, 533 U.S. 194, 207 (2001).   See Cordova v. Aragon, 569 F.3d 1183, 1188 (10th

Cir. 2009)("A Fourth Amendment claim of excessive force is analyzed under the 'objective reasonableness' standard that governs other Fourth Amendment inquiries.").   Hence, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   Graham v. Connor, 490 U.S. 386, 396 (1989).   The Tenth Circuit has explained:

> Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors:   the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(quoting Graham v. Connor, 490 U.S. at 396)(internal quotation marks and citations omitted).   Additionally, a court must judge the reasonableness of a particular use of force from the "perspective . . . of the information possessed by the [officers]."   Weigel v. Broad, 544 F.3d at 1152 (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987))(citations and internal quotes omitted).

When analyzing a § 1983 claim for both excessive force and unlawful arrest, a court must look first at whether the arrest was lawful, and then at whether the officers' use of force was reasonable in light of the lawfulness of the arrest. The Tenth Circuit has explained:

> [I]n cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it.   If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest.   If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap. The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.

Cortez v. McCauley, 478 F.3d 1108, 1127 (10th Cir. 2007)(emphasis added).   Moreover,

in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

Cortez v. McCauley, 478 F.3d at 1126.   See Smith v. Kenny, 678 F. Supp. 2d 1124, 1161 (D.N.M. 2009)(Browning, J.)(noting that finding the officers' use of force is "commensurate with the circumstances" depends upon whether the arrest was lawful or unlawful).   Thus, if it is clear that the amount of force used would have been reasonable if the detention or arrest had been appropriate, then the plaintiff can recover damages only for the unlawful arrest -- including any damages that flow from the officers' use of force during the arrest -- but there will be no separate excessive-use-of-force claim.

## LAW REGARDING THE COLLECTIVE-KNOWLEDGE DOCTRINE

"Under the collective-knowledge doctrine -- also called the 'fellow officer rule' -- the knowledge of one officer supporting a search or seizure may be imputed to other law enforcement officers acting in conjunction with the knowledgeable officer."   James v. Chavez, 830 F. Supp. 2d 1208, 1260 (D.N.M. 2011)(Browning, J.)(citing United States v. Hensley, 469 U.S. 221, 232-33 (1985);   United States v. Wilkinson, 633 F.3d 938, 941 (10th Cir. 2008)).   The collective-knowledge doctrine stems from United States v. Hensley, in which the Supreme Court held that evidence uncovered in the police officers' stop of a defendant based on a notice that another state issued about the defendant's outstanding warrant was admissible, stating that "the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying the stop."   469 U.S. at 223.   There are two categories under which the collective-knowledge doctrine imputes knowledge among officers: "'horizontal' collective knowledge and 'vertical' collective knowledge."   United States v.

-26-

Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008).

"The first category subsumes situations where a number of individual law enforcement officers have pieces of the probable cause puzzle, but no single officer possesses information sufficient for probable cause." United States v. Chavez, 534 F.3d at 1345 (citing United States v. Shareef, 100 F.3d 1491, 1503-05 (10th Cir. 1996)). In these situations, a court "must consider whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." United States v. Chavez, 534 F.3d at 1345 (citations omitted); United States v. Christy, 810 F. Supp. 2d 1219, 1261 (D.N.M. 2011)(Browning, J.). The second category subsumes situations "where one officer has probable cause and instructs another officer to act, but does not communicate the corpus of information known to the first officer that would justify the action." United States v. Chavez, 534 F.3d at 1345 (emphasis in original). In these situations, the relevant inquiry is whether the officer who requested that the other law enforcement officer to conduct a search or make a seizure had a sufficient legal basis to make the request. See United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1227 (10th Cir. 2008)("When law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert -- rather than the officer who conducted the challenged action -- had the requisite level of suspicion."). The first and second categories are not mutually exclusive; for example, "the officer who has probable cause may possess that information as a result of communication from other officers." United States v. Chavez, 534 F.3d at 1345 n.12.

While the collective-knowledge doctrine is most commonly applied to impute reasonable suspicion or probable cause to other officers, see, e.g., United States v. Chavez, 534 F.3d at

1345-46, several courts and judges have stated or suggested that it also can be used to impute knowledge of exigent circumstances, see, e.g., United States v. Russell, 436 F.3d 1086, 1094-95 (9th Cir. 2006)(Thomas, J., concurring in part and dissenting in part)("We analyze the 'reasonable grounds to believe that there is an emergency at hand,' on an objective basis, taking into consideration the collective knowledge of the officers at the time." (citing United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir. 1986))); Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003).   The Court has adopted this view and applies the collective-knowledge doctrine in its exigent circumstances analysis.   See James v. Chavez, 830 F. Supp. 2d at 1261 ("The Court will take into account this collective-knowledge rule in its exigent circumstances analysis."); United States v. Christy, 810 F. Supp. 2d at 1262 ("The Court will apply the collective-knowledge doctrine in its determination whether exigent circumstances existed and whether there was sufficient probable cause to obtain a warrant.").

## ANALYSIS

The Court will allow Vollmer to testify about his thinking and beliefs when dispatched to 1111 Major on the day of the underlying incident, including testimony about his past encounters with Maples when he was dispatched to 1111 Maples Ave., because this information is relevant to Maples' Fourth Amendment allegations, and is probative whether Vollmer's and Fox's conduct and arrest of Maples was reasonable.   Similarly, Vollmer can testify about how his knowledge about Maples and 1111 Major played into his beliefs about the hazard alert provided in the CAD report in this case.   The Court will also allow the Defendants to bring out the number of past police encounters Maples has had and how many of those incidents ended in the officers handcuffing and/or arresting Maples, as this information is being offered for the proper, relevant

purpose of rebutting his emotional-distress damages claim and his assertion that he believed he was free to walk away from Vollmer when Vollmer arrived at 1111 Major and asked Maples to speak with him.   For the same reasons, the Court will also allow the Defendants to inquire specifically into two of Maples' prior encounters with police officers: the incident in which Maples fled and was pursued by a K-9 unit, and the incident in which Maples alleged police brutality.   Assuming Maples is candid about the incidents, the Court will not allow the Defendants to ask Maples about the allegation in the police-brutality incident that Maples rammed his head into the police car window.   Finally, the Court will not allow the Defendants to inquire into the circumstances or nature of any of Maples' other past police encounters.

**I.   THE COURT WILL ALLOW THE DEFENDANTS TO ELICIT TESTIMONY ABOUT MAPLES' CRIMINAL HISTORY TO THE EXTENT VOLLMER'S PAST ENCOUNTERS WITH MAPLES' PROVIDED HIM KNOWLEDGE OF MAPLES' HISTORY, AND WILL ALLOW VOLLMER TO TESTIFY HOW THAT KNOWLEDGE INFORMED HIS BELIEFS AND CONDUCT IN <u>ARRIVING AT 1111 MAJOR ON THE DAY OF THE INCIDENT</u>.**

Maples asserts that the Court should prevent any mention of his criminal history, as it is "irrelevant, should not be permitted for impeachment purposes, and any relevance that some of the history may have is inadmissible pursuant to Federal Rules of Evidence 403 and 404."   Motion in Limine at 2.   The Defendants disagree, and assert that information about prior incidents in which police were dispatched to 1111 Major, and Vollmer's personal dispatch to 1111 Major, in which he encountered Maples are particularly germane to Maples' Fourth-Amendment unlawful arrest and excessive force allegations.   The Court concludes that information known to officers on the scene the day of the underlying incident about Maples' criminal history, including information Vollmer personally knew about Maples' criminal history, is offered for a proper purpose, is relevant, and is probative whether the Individual Defendants' arrest of Maples violated his Fourth Amendment

rights.

Generally, a person's criminal history is inadmissible where it is offered for propensity purposes, or, in other words, to show that, because they committed a crime in the past, they possess the character trait of engaging in criminal acts and acted in conformity with that trait. See Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The Tenth Circuit has noted:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy i[n] excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

United States v. Gilliland, 586 F.2d 1384, 1388-89 (10th Cir. 1978). Because rule 404(b) is applicable to all persons, not just criminal defendants, the same general rule applies in the civil context as well. See O'Brien v. Mitchell, 883 F. Supp. 2d 1055, 1093-94 (D.N.M. 2012) (Browning, J.)("The Rule has been amended to clarify that in a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait.")(quoting Fed. R. Evid. 404 advisory committee's note to 2006 amendments).

The same evidence may, however, be permitted for other purposes. Rule 404(b)(2) allows admission into evidence of a person's prior bad acts, including evidence of previous crimes, where it is offered for a proper purpose, including "knowledge." Fed. R. Evid. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").   When offered
for a proper purpose, however, the Tenth Circuit requires the Court to: (i) determine whether the
evidence is relevant; (ii) whether it passes muster under rule 403's balancing test; and (iii) provide
a limiting instruction pursuant to rule 105 if a party so requests.   See e.g., United States v. Zimora,
222 F.3d at 762.   Information about Maples' criminal history of which Vollmer had personal
knowledge on January 26, 2010, is offered for a proper purpose, is relevant for Fourth-Amendment
purposes to put the Individual Defendants' actions in context for purpose of evaluating whether a
reasonable officer would have believed the conduct was reasonable, and the danger of unfair
prejudice to Maples of allowing Vollmer to testify about his knowledge does not substantially
outweigh its probative value.

        In regard to Maples' unlawful arrest allegation, the Tenth Circuit has stated that
"[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of
which he or she had reasonably trustworthy information are sufficient to lead a prudent person to
believe that the arrestee has committed or is committing an offense."   Keylon v. City of
Albuquerque, 535 F.3d at 1216.   Vollmer has previously been dispatched to 1111 Major, because
of Maples' alleged criminal acts.   Additionally, the CAD report which Vollmer received when he
was dispatched to 1111 Major on the date of the incident in question in this lawsuit provided a
hazard warning, and Vollmer's knowledge of Maples' prior arrests likely informed Vollmer why
that hazard warning appeared on the CAD report, and made trustworthy in Vollmer's eyes the
information on which Vollmer concluded that Maples committed an offense.   Vollmer's personal
knowledge about Maples' criminal history at the time he arrived on the scene thus makes more
probable that he reasonably believed Maples had committed a crime, which is a fact of

consequence in Maples' unlawful arrest allegation.   Maples' criminal conduct about which Vollmer had personal knowledge is therefore relevant to the case.   See Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.").

Vollmer's knowledge is also relevant to Maples' excessive force allegation against Fox. Under the collective-knowledge doctrine, "the knowledge of one officer supporting a search or seizure may be imputed to other law enforcement officers acting in conjunction with the knowledgeable officer." James v. Chavez, 830 F. Supp. 2d at 1260.   Regardless whether Fox or any other officer at the scene of Maples arrest had personal knowledge about Maples' arrest, Vollmer's knowledge about Maples' past criminal acts may be imputed to the other officers at the scene, including officer Fox.   Because the jury must determine whether Fox's use of force was excessive for Fourth-Amendment purposes based on the "perspective . . . of the information possessed by the [officers]," Weigel v. Broad, 544 F.3d at 1152, Vollmer's knowledge about 1111 Major and Maples' past criminal acts is also relevant to Fox's conduct in arresting Maples.

Rule 403 does not prevent admission into evidence Vollmer's personal knowledge about Maples' past criminal acts, because it is probative for purposes of the jury's determination whether the Individual Defendants conduct arrest Maples was constitutional.   As a threshold matter "it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d at 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original). Vollmer's knowledge about Maples' past criminal conduct, because he personally was dispatched to 1111 Major because of Maples' conduct, is trustworthy, and directly informed his belief

-32-

whether Maples had committed a crime here.   Additionally, because Vollmer knew that the hazard warning on the CAD report indicated a previous suicide attempt or violent crime at the residence, and because he was familiar with Maples having committed violent and dangerous acts there in the past, his knowledge is probative both whether a reasonable officer would have believed Maples committed a criminal act and whether a reasonable officer would have used more force than without such knowledge.   Vollmer's personal knowledge, given its maximum probative effect, therefore is highly probative.   See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274 ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").   Allowing into evidence Vollmer's knowledge about Maples' prior criminal acts, and allowing the jury to hear that Maples has committed prior bad acts that Vollmer observed, is prejudicial to Maples.   On balance however, because Maples' Fourth-Amendment allegations turn on whether the officers' actions were reasonable given the circumstances, which included Vollmer's knowledge, the probative value of the information outweighs its prejudicial effect.   Considering the Tenth Circuit's guidance that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly," United States v. Smalls, 605 F.3d at 787, the Court concludes that rule 403 does not prevent the admission of Vollmer's knowledge about Maples' past criminal acts in which he encountered Maples. Pursuant to rule 105, however, the Court will provide to the jury a proper limiting instruction about Vollmer's testimony if Maples requests the Court to do so.

**II.   TO SHOW BIAS, THE COURT WILL ALLOW THE DEFENDANTS TO ELICIT TESTIMONY FROM MAPLES ABOUT THE NUMBER OF PAST POLICE ENCOUNTERS HE HAS HAD, WHETHER THOSE ENCOUTERS INVOLVED APD, AND THE NUMBER OF THOSE ENCOUNTERS WHICH ENDED IN THE**

**OFFICERS HANDCUFFING AND/OR ARRESTING HIM.**

Evidence of Maples' criminal history in which he encountered APD officers, and Vollmer particularly, are admissible, as they are offered for a proper purpose and are relevant to showing Maples' bias.  The Tenth Circuit has stated that it is "permissible impeachment to expose a witness's bias."  United States v. Baldridge, 559 F.3d at 1135 (citing United States v. Abel, 469 U.S. at 51).  Moreover, the Supreme Court points out that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy or truth of a witness' testimony."  United States v. Abel, 469 U.S. at 52.  In Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 4950730 (D.N.M. Oct. 8, 2012)(Browning, J.), the Court allowed the defendants to inquire into the plaintiffs' past arrests by APD officers to show the plaintiffs' bias against APD as possible motivation to slant their testimony against APD and as motivation to bring the lawsuit. The Court noted: "[I]t is possible that APD's arrests in the past have caused the Montoyas to dislike APD and thus may induce them to slant their testimony against APD."  2012 WL 4950730, at *15.  The Court concluded: "The Montoyas' prior arrests and charges by APD, the same police department that the Montoyas are suing in this case and who employs Shelden and Lovato, therefore are relevant and admissible to show their bias against APD, and against Shelden and Lovato, in this case."  2012 WL 4950730, at *15.  In performing the rule 403 balancing test, however, the Court found:

> The danger of unfair prejudice to the Montoyas of th[e] information [about the circumstances and nature of the Montoyas' prior APD encounters] substantially outweighs the minimal probative value that may be added from admission of most of the circumstances of the arrests or by admission of the number of times that APD has charged each of the Montoyas other than in this case.

2012 WL 4950730, at *15.   Notably, the Court based this conclusion on the admission of a great number of other potentially prejudicial information, and on the fact that "none of [the APD officers' arrests of the Montoyas in the past] were by Shelden or Lovato . . . ."   2012 WL 4950730, at *15.   The Court thus limited the Defendants' questioning of the Montoyas about their prior law enforcement encounters:

> [T]he Court will therefore allow the Defendants to cross-examine about the Montoyas about APD arrests and charges, other than for the incident underlying the charges in this case, only on: (i) whether APD criminally charged them; and (ii) how many times APD has ever arrested them. The Defendants are not otherwise permitted to inquire about the circumstances of the charges or arrests, except as permitted in this Memorandum Opinion and Order.

Montoya v. Sheldon, 2012 WL 4950730, at *15.

Here, as the plaintiffs in Montoya v. Sheldon did, Maples has encountered APD fifteen times in the past, fifteen time to be precise, and APD has arrested Maples on a number of those occasions. The plaintiffs testified at trial in Montoya v. Sheldon, and Maples also intends to testify at trial.   As in Montoya v. Sheldon, therefore, these prior encounters provide Maples with a possible bias against APD, possible motive to slant his testimony against APD, the City of Albuquerque, Vollmer, and Fox, and provide him motive to bring the lawsuit against the Defendants.   Thus, as the Court concluded in Montoya v. Sheldon, these past encounters provide fertile ground to explore bias on cross-examination.   Nevertheless, substantial evidence about the circumstances and nature of Maples' past APD encounters and arrests will, at some point, cross the line and become unfairly prejudicial in violation of rule 403.   On the other hand, whereas the Court pointed out in Montoya v. Sheldon that neither defendant officer had interacted with the plaintiffs in the past, Vollmer has encountered Maples and has arrested him before the event at issue.   The facts here therefore add support to the Court's conclusion in Section I, supra, that the

-35-

circumstances of Maples' past criminal acts in which Vollmer was involved are admissible. Maples' case is also distinguishable from Montoya v. Sheldon in that, whereas Maples has alleged police brutality once in the past in connection with an APD arrest of him, the plaintiffs in Montoya v. Sheldon had not.   Maples' past allegation of police brutality is thus probative of his bias in alleging excessive force against Fox here, and the Court believes the prejudicial effect of such information does not outweigh its probative value in allowing the jury to determine whether the allegation is credible here.   To allow the Defendants to bring out that Maples' allegedly rammed his head into the police cruiser, however, presents prejudice which may prove unfairly prejudicial in the context of the amount of evidence the Court is otherwise admitting about Maples' criminal history; there is no evidence that Vollmer knew of this arrest at the time he arrested Maples on January 26, 2010.   The Court concludes that, under rule 403, the danger of unfair prejudice of this additional information substantially outweighs any additional probative value that it adds.   The Court will thus keep the allegation of self-inflicted harm out of the case.   The Court, therefore, as it did in Montoya v. Sheldon, will limit the Defendants' cross-examination about Maples' past police encounters.   The Court will thus allow the Defendants to cross-examine Maples about his APD encounters and arrests only to the extent necessary to secure the following information: (i) how many times he has encountered APD; (ii) whether APD arrested him in any of those instances; and (iii) whether he has alleged excessive force or police brutality in any of those instances.   The Defendants are not otherwise permitted to inquire about the circumstances of the past charges or arrests, except as this Memorandum Opinion and Order permits.[6]

---

[6] Maples may have an interest in explaining the circumstances of these arrests or the circumstances of their other criminal charges to show the Defendants' bias and lack of credibility, or to explain his fear of Vollmer.   He is free to explain the circumstances of the arrests or charges,

**III.  SHOULD MAPLES CONTEND THAT HE BELIEVED HE COULD WALK AWAY FROM VOLLMER WHEN VOLLMER ASKED TO SPEAK WITH HIM, THE COURT WILL ALLOW THE DEFENDANTS TO INQUIRE INTO THE PAST SIX INCIDENTS IN WHICH MAPLES ALLEGEDLY FLED FROM <u>OFFICERS</u>.**

The Defendants argue that Maples' past encounters with law enforcement officers in which Maples fled from the officers, or otherwise resisted arrest, are admissible notwithstanding rule 404(b), because they are offered for a permissible purpose, as "[i]t is clearly a plan of [Maples'] to avoid contact with law enforcement if possible.   Plaintiff knew from past instances, how to avoid contact with law enforcement by fleeing, eluding or evading."   MIL response at 6.   To the extent that that the Defendants assert that the evidence is offered for purposes of showing a plan or modus operandi, neither purpose is proper in this case where there is no issue about identity.   Evidence otherwise excluded under rule 404(b)(1) may be admissible "to establish a common s<u>cheme or design</u> when its probative value outweighs the prejudice . . . resulting from its admission."   <u>United States v. Kelley</u>, 635 F.2d 778, 781 (10th Cir. 1980)(citing <u>United States v. Lucero</u>, 601 F.2d 1147 (10th Cir. 1979))(emphasis added).   This proper purpose allows in otherwise inadmissible evidence that is part of the scheme or plan to show that the person for whom it is offered against carried out the plan or scheme.   <u>See</u> <u>United States v. Kelley</u>, 635 F.2d at 782 (allowing in evidence that the defendant committed "the uncharged crime" of burglarizing a pawn shop to "enable[] the jury to consider the relationship between Kelley, Jesse and Davis, . . . [which] allowed the jury to more fully understand the manner in which the bank robbery was effectuated" to prove that the defendant committed the robbery with which he was charged."); <u>United States v. Lucero</u>, 601 F.2d at 1148-49 (allowing in evidence about the defendant's discussion of drug transactions where the

but, of course, may open the door to the Defendants' further questioning.

defendant was charged only with money laundering for a drug dealer, because "the taped conversations were relevant to the jury's need to evaluate the credibility of Lucero's claim that his connection with the Juarez drug dealer arose out of legitimate currency speculation transactions"). Similarly, with regard to the Defendants' attempt to offer the evidence as modus operandi evidence, the Tenth Circuit has recognized that "proof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity." Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir. 2005).

Evidence about modus operandi or any plan or scheme is not proper here, because there is no issue about identity in the case. Here, there is no issue whether Maples was the person about whom Vollmer and Fox were investigating when they were dispatched to 1111 Major following S. Lane's 911 call. There is also no issue whether Maples was the person who fled from police officers. Rather, the Defendants' assertion that Maples has a common plan or scheme, or that it is his modus operandi to flee from police, is the equivalent of the assertion that, because Maples has fled in the past, he fled here. In other words, Maples' propensity, when encountering police officers, is to flee. Offering his past incidents of fleeing for this purpose is an example of improper character evidence, which rule 404(b)(1) excludes.

Moreover, beyond the modus operandi argument failing to find sound support in law, the evidence of Maples' past flight from APD officers does not indicate a consistent pattern as rule 406 requires for its admission as evidence of a habit. The Defendants assert that Maples has fled or otherwise evaded APD encounters six out of the fifteen past encounters with APD. While habit evidence may not require that Maples fled from APD fifteen out of fifteen times, six out of fifteen does not describe Maples' regular response to a repeated specific situation. See Guidance

-38-

Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d at 1269 ("Habit 'describes one's regular response to a repeated specific situation.'")(quoting E. Cleary, McCormick on Evidence § 162, at 340).   Fleeing from APD officers only six out of fifteen times is not sufficiently analogous to common examples of habit evidence, such as "going down a particular stairway two stairs at a time, . . . giving the hand-signal for a left turn, or . . . alighting from railway cars while they are moving." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d at 1269.   Put simply, Maples' past arrests in which he fled from APD officers does not show that the act of fleeing has become a "semi-automatic" response to his police encounters. Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 705 F. Supp. 2d at 1269("The doing of the habitual acts may become semi-automatic.").   The Court therefore concludes that evidence about Maples' six past APD encounters in which he fled or otherwise evaded the officers is not admissible under rule 406 as habit evidence.

Maples, at the hearing, however, stated that he intends to assert at trial that he believed he was free to walk away from Vollmer when Vollmer arrived at 1111 Major and directed Maples to talk to him.   Another purpose for which rule 404(b)(2) allows in otherwise inadmissible character evidence is "knowledge."   Fed. R. Evid. 404(b)(2).   The Tenth Circuit has stated that, "knowledge may be inferred from circumstantial evidence, including . . . information provided to th[e] defendant[] on prior occasions."   United States v. Self, 2 F.3d 1071, 1088 (10th Cir. 1993)(quoting United States v. MacDonald & Watson Waste Oil Co., 933 F.2d 35, 55 (1st Cir. 1991)).   Thus, "while knowledge of prior illegal activity is not conclusive as to whether a defendant possessed the requisite knowledge of later criminal activity, it most certainly provides

circumstantial evidence of the defendant's later knowledge from which the jury may draw the necessary inference."  United States v. Self, 2 F.3d at 1088.

Once Maples asserts at trial he believed he could walk away from Vollmer when Vollmer arrived at the residence on the day of the incident, Maples' has made an issue at trial whether he had knowledge doing so was illegal.  Maples opens the door to the Defendants' ability to specifically contradict that evidence, even where the evidence may otherwise be inadmissible. See Montoya v. Shelden, CIV 10-0360 JB/WDS, 2012 WL 4950707, at *1 (D.N.M. Oct. 12, 2012)(Browning, J.)("This doctrine, known as 'specific contradiction,' allows such impeachment even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible." (internal quotations omitted))(quoting United States v. Crockett, 435 F.3d at 1313).

Section 30-22-1 of the New Mexico Statutes Annotated provides that "[w]hoever commits resisting, evading or obstructing an officer is guilty of a misdemeanor."  N.M.S.A. 1978, § 30-22-1.  Further, this statute provides:

Resisting, evading or obstructing an officer consists of:

A. knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ or process;

B. intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;

C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle; or

D. resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

N.M.S.A. 1978, § 30-22-1.   If Maples has been arrested for fleeing the officers or for otherwise evading or resisting arrest in any one of his past six arrests in which he allegedly fled or otherwise resisted arrest, this evidence is probative of and admissible to show that he had knowledge his resisting arrest was illegal, and was grounds for Vollmer and Fox to arrest him.   Moreover, inquiring into the circumstances of these arrests to elicit whether he was arrested specifically for evading or resisting arrest may provide evidence contradicting his alleged belief that he was free to walk away and is probative whether the jury should give credence to this testimony.   Should Maples testify about this belief at trial, therefore, he opens the door to the Defendants impeaching him and contradicting this belief by offering evidence about his prior arrests where he fled, evaded, or otherwise resisted APD's arrest.   If, however, he was not arrested under this statute for his conduct in fleeing or resisting the officers' arrest, the probative value of this evidence is largely lost, and, to allow in the circumstances of these arrests impermissibly subjects Maples to unnecessary prejudice.   Thus, should Maples stand by his intent to testify that he believed he was free to walk away from Vollmer at the time of the incident, the Court will thus allow the Defendants to inquire into these past six incidents only to the extent necessary to elicit testimony: (i) whether and how many times he has evaded or otherwise resisted arrest in the past when he encountered APD officers; and (ii) ask whether he was arrested for fleeing or otherwise resisting their attempt to arrest him.   If Maples is candid and truthful with his answers, the Court will not allow the Defendants further inquiry into the circumstances of these past arrests.

**IV.     SHOULD MAPLES PURSUE EMOTIONAL DISTRESS DAMAGES AT TRIAL, THE COURT WILL ALLOW THE DEFENDANTS TO INQUIRE INTO TWO OF MAPLES' PAST ENCOUNTERS WITH POLICE: (i) THE ENCOUNTER IN WHICH HE FLED AND APD'S K-9 UNIT PURSUED HIM; AND (ii) THE ENCOUNTER IN WHICH MAPLES ALLEGED APD USED EXCESSIVE FORCE.**

-41-

The Defendants argued at the hearing that, beyond the evidence which the Court has already admitted about Maples' criminal history, the circumstances and nature of two of his past arrests are particularly probative for purposes of rebutting his emotional-distress damages claim: (i) the incident in which Maples fled from police, was pursued by APD's K-9 unit, and evaded arrest by climbing a tree; and (ii) Maples' past arrest in which he alleged police brutality.   They assert that bringing out the nature and circumstances of these past arrests provides context which will allow the jury to assess the extent of the emotional damages he suffered in this incident, if any. The Court concludes that the circumstances surrounding these two incidents are admissible, because they are offered for the proper purpose to establish and rebut a claim at issue, and are relevant and probative of the same.

Under rule 404(b), "admission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence." Udemba v. Nicoli, 237 F.3d at 15 (citing Lewis v. District of Columbia, 793 F.2d at363).[7] See Chamberlin v. City of Albuquerque, No. CIV 02-0603, 2005 WL 2313515, at *2 (D.N.M. July 31, 2005)(Browning, J.)("Because [the plaintiff]'s uncharged misconduct, drug and alcohol abuse, and mental illness [are all] relevant to rebut [the plaintiff]'s claim of damages, the Court will allow [the defendant] to introduce certain specific instances of . . . conduct.").   In Mata v. City of Farmington, the plaintiff brought a § 1983 claim against police officers for excessive force and sought emotional distress damages.   See 798 F.Supp.2d at 1237.   The Court allowed the

---

[7] Although assisting the jury in measuring damages is not among one of the permitted uses expressly listed in rule 404(b), the purposes listed in rule 404(b) "are not exhaustive, but are merely examples of the kinds of proper purposes for which evidence of extrinsic acts can be used." United States v. Porter, 881 F.2d 878, 886 (10th Cir. 1989).

defendant officers to inquire about the plaintiff's past "interactions with the [defendant police department], other arrests, and violent encounters in which he has been involved."   798 F.Supp.2d at 1237.   The Court reasoned that the defendants were not offering the evidence for purposes of showing the plaintiff's propensity to act violently, but rather "to contest [the plaintiff]'s asserted emotional distress damages."   798 F.Supp.2d at 1237.   In Montoya v. Sheldon, the Court, after performing the required 403 balancing test for admitting evidence that would otherwise be excluded as improper character evidence under rule 404(b), allowed the Defendants limited inquiry into the plaintiff's past arrests.   See Montoya v. Sheldon, 2012 WL 4950730, at *12.   The Court reasoned:

> Allowing the Defendants free reign to cross-examine M. Montoya on the circumstances of his arrests, however, has the potential to get to the point in which the danger of unfair prejudice or confusion of the issues may substantially outweigh the probative value of evidence about the way in which M. Montoya's prior arrests differ from the arrest in this case.   See Fed. R. Evid. 403.   While M. Montoya's prior arrests are probative as to whether he was emotionally distressed, part of the Court's gate-keeping role is to allow into evidence admissible prior crimes, wrongs, or bad acts, when offered for a proper purpose, but to be wary not to allow in more than is necessary, and unfairly prejudice the witness or confuse the issues for the jury.   The issue in this case is whether the Defendants' alleged use of excessive force in the arrest, and the arrest itself, violated the Montoyas' constitutional rights, and whether M. Montoya is entitled to damages for the emotional distress the Defendants' unconstitutional conduct [caused].   The issue is not whether M. Montoya is a bad guy.   The Court finds that allowing the Defendants to ask M. Montoya whether he has been arrested multiple times, and hearing M. Montoya answer that he has, will assist the jury in measuring the extent of M. Montoya's damages.   Inquiring into how the Defendants' conduct in arresting M. Montoya here differed from his arrests in the past will also assist the jury in determining the extent of M. Montoya's emotional distress.   Allowing the Defendants to inquire about the circumstances of his prior arrests, or the charges for which M. Montoya was arrested, however, likely does not add anything beyond the prior two questions in making more or less probable the extent of M. Montoya's emotional distress, and is, therefore, likely not relevant.   See Fed. R. Evid. 401.   If the circumstances or charges are relevant, the Court nevertheless finds that the danger of unfair prejudice or confusion of the issues substantially outweighs any probative value which more explanation of the circumstances or charges may have.

-43-

> The Court is not oblivious or insensitive to the reality that discussion of prior arrests is prejudicial to M. Montoya.   The Court is also sensitive to the reality that certain crimes, including domestic violence, which M. Montoya has been arrested for in the past, carry with them a stigma that will likely prejudice M. Montoya by evoking an emotional response from the jury, even though M. Montoya was never convicted of the charges. The Court will therefore not permit the defendants to inquire into the circumstances of M. Montoya's prior arrests beyond the differences of the police's conduct from the underlying arrest in this case to rebut M. Montoya's emotional distress claim, because a danger of unfair prejudice substantially outweighs any probative value of the additional evidence.

Montoya v. Sheldon, 2012 WL 4950730, at *12.

Maples has a substantial criminal history, and, as it stands currently, the Court, pursuant to the Federal Rules of Evidence, will allow the jury to hear a substantial amount of Maples' criminal history.   The information will prejudice Maples, but the Court has properly limited the Defendants' ability to inquire into the circumstances of many of the arrests, as the circumstances of those incidents do not add much probative value after the jury hears the number of Maples' police encounters, his encounter with Vollmer, his arrests by APD, and likely that he fled or otherwise evaded arrest.   Maples' contention that he suffered emotional distress damages, however, as the Court has noted in Montoya v. Sheldon, Mata v. Farmington, and Chamberlin v. City of Albuquerque, opens the door to a substantial amount of evidence that may otherwise be inadmissible, both so that Maples can prove to the jury the extent of his damages and so that the Defendants can rebut Maples' proof.   To give the jury context and information on which to compare how Maples' alleged unlawful arrest and Fox's alleged use of excessive force here emotionally damaged him, he will have to provide the jury information on which to assess his damages, which necessarily includes the circumstances of his past arrest in which he alleged police brutality, and includes allowing him to explain how fleeing the APD K-9 unit in a tree was not comparable to this incident.   Given the other evidence coming in, the prejudicial value of this

information, given its minimum reasonable prejudicial effect, is not much.   It may, on the other hand, help Maples in his contention here that he fled Vollmer because of fear arising from past APD encounters.   The Court concludes, therefore, that the circumstances of these two incidents are admissible, and will allow the Defendants to inquire into those circumstances.   As the Court concluded in <u>Montoya v. Sheldon</u>, however, other than already stated in this Memorandum Opinion and Order, the Court will not permit the Defendants to inquire into the circumstances of Maples' prior arrests beyond eliciting differences between police conduct in those two instances and the Individual Defendants' conduct in the underlying arrest in this case to rebut Maples' emotional- distress claim.   <u>See Montoya v. Sheldon</u>, 2012 WL 4950730, at *12.   ("The Court will therefore not permit the defendants to inquire into the circumstances of M. Montoya's prior arrests beyond the differences of the police's conduct from the underlying arrest in this case to rebut M. Montoya's emotional distress claim.").

**IT IS ORDERED** that the Plaintiff's Motion in Limine No. 4: Exclusion of Testimony and Evidence Regarding Plaintiff's Prior Criminal History, filed February 28, 2013 (Doc. 35), is granted in part and denied in part. The Court will thus allow Defendant Matthew Vollmer to testify as to his knowledge about Plaintiff Justin Maples' criminal history derived from encounters with Maples, and will allow the Defendants to inquire into whether Maples has been handcuffed in the past, whether he has been arrested in the past, the number of times that he has been arrested, whether it was Albuquerque Police Department officers that executed those arrests, and whether he has alleged that officers used excessive force in any of those past incidents, but will allow no further discussion of the nature of Maples' past arrests.   If, however, Maples opens the door for admission of further relevant information about his criminal history by adhering to his decision to

pursue emotional-distress damages at trial, the Court will allow the Defendants to bring out the

circumstances in two probative prior incidents -- involving APD's K-9 unit and his police brutality

allegation -- so that the Defendants can use those incidents to provide context in rebutting Maples'

alleged emotional-distress damages.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Anna C. Martinez
Albert L. Hutchinson, Jr.
Aequitas Law, LLC
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

David Tourek
   City Attorney
Stephanie M. Griffin
Kristin J. Dalton
   Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

     *Attorneys for the Defendants*

-46-