# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUSTIN MAPLES,

      Plaintiff,

vs.                                                                        No. CIV 12-0294 JB/RHS

MATTHEW VOLLMER,
an Officer of the Albuquerque
Police Department, Individually,

DAVID FOX, an Officer of the Albuquerque
Police Department, Individually,

CITY OF ALBUQUERQUE,
a municipality organized under the
laws of the State of New Mexico,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' First Motion in Limine to Exclude Evidence of the Results from Plaintiff's Underlying Criminal Case, filed March 1, 2013 (Doc. 40)("Motion in Limine").   The Court held a hearing on March 5, 2013.   The primary issue is whether the Court should admit testimony and/or evidence about results from Plaintiff Justin Maples' underlying criminal case. The Court will grant in part and deny in part the Motion in Limine.   The Court will not allow the jury to know about the results of the underlying state criminal case against Maples; the Court will allow Maples to put into evidence that Defendants Matthew Vollmer and/or David Fox, the prosecuting police officers in the criminal case, did not go to court to testify against him at the trial.   The underlying state court dismissal is legally irrelevant to Maples' 42 U.S.C. § 1983 claims based on Vollmer's and Fox's alleged violations of Maples' Fourth Amendment rights, and the danger of confusing the jury with this information substantially

outweighs its minimal probative value.  That Vollmer and Fox did not appear at the state court trial to testify against Maples, however, is relevant to Maples' punitive damages claim, as their decision not to testify is probative of their mental state during Maples' arrest.  The Court concludes that allowing Maples to put in this limited evidence, while excluding any mention of the state court dismissal, will not likely mislead the jury on their task to determine whether the arrest was reasonable.  Accordingly, the Court will not exclude from trial evidence that Vollmer and Fox did not appear at Maples' underlying criminal trial.

## FACTUAL BACKGROUND

On January 26, 2010, Vollmer and D. Fox were dispatched to 1111 Major Northwest, Albuquerque, New Mexico, Maples' residence, because of a 911 call made by Sarah Lane, the daughter of Maples' then-boyfriend.  See Complaint for Damages, Declaratory and Injunctive Relief and Petition for Writ of Mandamus ¶ 12, at 3, filed in state court on January 26, 2012, filed in federal court March 22, 2012 (Doc. 1-1)("Complaint").  Maples was standing in his front yard when the officers arrived and tried to walk away from them.  See id. ¶¶ 13-14, at 3.  Vollmer and Fox chased after Maples, and Maples then fled from the officers.  See id. ¶¶ 17-18, at 3.  Vollmer and/or Fox tackled Maples when they caught up to him.  See id. ¶ 19, at 3.  Maples alleges that Vollmer and Fox used "excessive and unnecessary force" against him, id. ¶ 20, at 4, and "caused him to suffer damages," id. ¶ 21, at 7.  Vollmer placed Maples in handcuffs, arrested him, transported him to the prisoner transport center, and booked him.  See Affidavit of Matthew Vollmer ¶¶ 16-17, at 3, filed December 20, 2012 (Doc. 19-1).  The state criminal case resulting from Maples' arrest was subsequently dismissed, because Vollmer and Fox failed to appear at the trial and to prosecute the case.  See Response in Opposition to Defendants' First Motion in

Limine at 1, filed March 4, 2013 (Doc. 49)("MIL Response").

## PROCEDURAL BACKGROUND

Maples instituted this lawsuit in state court on January 26, 2012, and the Defendants removed the case to this federal court on March, 22, 2012.  See Notice of Removal (Doc. 1).  Maples alleges that Defendants Vollmer, Fox, and the City of Albuquerque violated his constitutional rights by using excessive force in arresting him on January 26, 2010, at 1111 Major, and falsely imprisoning him following his arrest.   Maples alleges nine counts against the City of Albuquerque pursuant to the New Mexico Tort Claims Act, N.M.S.A. 1978, §§ 41-4-1 to -30, and 42 U.S.C. § 1983.   See Complaint ¶¶ 22-27, at 4-11.

On March 1, 2013, the Defendants filed their Motion in Limine, moving the Court, pursuant to rules 104, 401, 402, and 403 of the Federal Rules of Evidence, to exclude evidence of the results from the state criminal case against Maples.   See Motion in Limine at 1.   They argue that the criminal charges stemming from the underlying incident were dismissed is inadmissible, because it is irrelevant to the issue whether the officers had probable cause to arrest Maples at the time of the incident.   See Motion in Limine at 1.   They assert that "the disposition of the criminal case is not probative evidence of Plaintiff's unlawful arrest claim as the dismissal of the criminal charges does not make probable cause more or less likely."   Motion in Limine at 2 (citing Summers v. Utah, 927 F.2d 1165, 1166-67 (19th Cir. 1991); De Anda v. City of Long Beach, 7 F.3d 1418, 1422 (9th Cir. 1993)).   They assert that evidence of the underlying dismissal would "tend to mislead and confuse the jury and unfairly prejudice Defendants."   Motion in Limine at 3 (citing Fed. R. Evid. 403).   They argue:

> Allowing a civil jury to consider the disposition of the criminal charges would undoubtedly lead to confusion and create a preconceived notion that Defendants

somehow acted improperly and did not have probable cause.   The mere danger of this misconception amongst the jury simply equates to prejudice.   Moreover, no limiting instruction can fully remove the indelible stain left by this prejudicial evidence from the minds of the jury.   Therefore, even if this Court were to rule that the dismissal of the criminal case is relevant under Rule 401, this Court should still find that this evidence is inadmissible because it cannot withstand the Rule 403 balancing test.

Motion in Limine at 3.

Maples filed his MIL Response on March 4, 2013, asserting that the Defendants' Motion in Limine does not tell the whole story, as it "omits the reason that the specific case against Plaintiff was dismissed -- the officers failed to appear or prosecute the action."   MIL Response at 1. Maples points out that, although the Court found in Taylor v. Hudson, No. CIV 02-0775 JB/RHS, that an acquittal is inapposite whether a plaintiff's arrest is lawful, the dismissal of Maples' case is distinguishable, because where an acquittal reflects a jury's determination that the arrest was not lawful, the dismissal of his case for failure to prosecute "reflects the officers' . . . . determination that they did not have a sound legal basis for arresting Plaintiff."   MIL Response at 2 (citing Taylor v. Hudson, No. CIV 02-0775 JB/RHS, slip. op. (D.N.M. Dec. 8, 2003)(Browning, J.)). Maples asserts that "the case was dismissed is actually of secondary importance to the reason why it was dismissed." MIL Response at 2 (emphasis in original).   He contends that his dismissal is uniquely relevant given that, unlike an acquittal or dismissal in most cases, because Vollmer and Fox were the prosecutors of the state criminal case against Maples for the underlying incident, their decision not to prosecute the case is probative whether they believed there was probable cause for Maples' arrest.   See MIL Response at 3.   Maples asserts: "To deny Plaintiff the ability to inquire into the officers' flat failure to take a single step to prosecute Plaintiff after they initiated charges against him would deny him valuable, relevant evidence in support of his false arrest

-4-

claim."   MIL Response at 3-4.   He asserts that the Court should, at a minimum, allow him to inquire of Vollmer and Fox whether they appeared in court, and, if they answer no, follow up with why they did not do so.   See MIL Response at 4.

At the hearing, the Court asked the parties whether they would agree to the Court allowing Maples to inquire of Fox and Vollmer whether they showed up at court for the criminal proceedings against him, and when they admit that they did not, to move on to another line of questioning.   See Transcript of Hearing at 29:14-21 (taken Mar. 5, 2013)(Court)("Tr.").[1]   Maples responded that he intends to bring out that the officers failed to appear in court to prosecute the criminal case against him twice and not only once.   See Tr. at 29:22-25 (Court).   The Defendants responded that any testimony about the officers' failure to appear in court is "more prejudicial than probative" and irrelevant, as Maples is not alleging malicious prosecution.   Tr. at 30:4-7 (Dalton). The Court noted that the information likely has some probative value whether the officers believed there was probable cause to arrest Maples. See Tr. at 30:13-22 (Court).   The Defendants asserted that whether the officers prosecuted the case does not undermine that they had probable cause to at the time they arrested Maples.   See Tr. at 31:2-6 (Dalton).   The Court asked whether it might indicate that the officers were thinking that they did not have probable cause and that the case would go away if they chose not to prosecute it.   See Tr. at 31:7-10 (Court).   The Defendants responded that events subsequent to the arrest have no bearing on probable cause and have no bearing on whether the officers' actions were reasonable at the time they arrested Maples.   See Tr. at 31:11-18 (Court).

## LAW REGARDING RULE 403

---

[1]   The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcripts may contain slightly different page and/or line numbers.

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401.   "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and [unfairly] prejudicial evidence."   Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States

v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88

(4th Cir. 1980).   As the Supreme Court recently noted:

> In deference to a district court's familiarity with the details of the case and its
> greater experience in evidentiary matters, courts of appeals afford broad discretion
> to a district court's evidentiary rulings . . . .   This is particularly true with respect to
> Rule 403 since it requires an "on-the-spot balancing of probative value and
> prejudice, potentially to exclude as unduly prejudicial some evidence that already
> has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M.

Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).   "Evidence is not unfairly

prejudicial merely because it is damaging to an opponent's case."   United States v. Caraway, 534

F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir.

2003).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to

suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"

United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee

note)(emphasis in original).

## LAW REGARDING UNLAWFUL ARREST

"A police officer violates an arrestee's clearly established Fourth Amendment right to be

free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."

Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennessee v. Garner, 471

U.S. 1, 7 (1985)).   "The law . . . is unambiguous: a government official must have probable cause

to arrest an individual." Cortez v. McCauley, 478 F.3d 1108, 1117 (10th Cir. 2007)(citing

Tennessee v. Garner, 471 U.S. 1, 7 (1985)).   See Michigan v. DeFillippo, 443 U.S. 31, 36

(1979)("[T]he Constitution permits an officer to arrest a suspect without a warrant if there is

probable cause to believe that the suspect has committed or is committing an offense.").

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she had reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."   Keylon v. City of Albuquerque, 535 F.3d 1210, 1216 (10th Cir. 2008)(quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)).   The Supreme Court of the United States has stated that the existence of probable cause for an arrest depends on whether, based on historical facts leading up to the arrest, an objectively reasonable police officer would find probable cause:

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

Ornelas v. United States, 517 U.S. 690, 696-97 (1996)(quoting Pullman–Standard v. Swint, 456 U.S. 273, 289 n. 19 (1982))(alterations in original).

## RELEVANT LAW REGARDING PUNITIVE DAMAGES

Although the statute does not provide language of punitive damages for § 1983 claims, the Supreme Court looked to the common law of torts, in holding that punitive damages are available. See Saavedra v. Lowe's Home Ctrs., Inc., 748 F.Supp.2d 1273, 1298 n.3 (D.N.M. 2010)(Browning J.)("Section 1983 'was intended to create a species of tort liability in favor of persons deprived of federally secured rights.'")(quoting Smith v. Wade, 461 U.S. 30, 56  (1983)). See also Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986)(stating that the amount of the recovery in a § 1983 action is not capped by statute but rather "ordinarily determined according to principles

derived from the common law of torts").   The Supreme Court concluded that there is "no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort cause of action."   461 U.S. at 48-49. Accordingly, the Supreme Court looked to state and federal tort common law, holding that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."   Smith v. Wade, 461 U.S. at 56.   See Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1308 (10th Cir. 2003)("Unquestionably, punitive damages are available in § 1983 actions and are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")(quoting Jolivet v. Deland, 966 F.2d 573, 577 (10th Cir.1992))(internal quotations and changes omitted).   The recklessness standard has been defined by the Tenth Circuit as a defendant acting "in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."   Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).   The appropriate focus in awarding punitive damages "must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory damages.'" Youren v. Tintic Sch. Dist., 343 F.3d at 1308 (quoting Smith v. Wade, 461 U.S. at 54).

## ANALYSIS

The Defendants argue that the disposition of the criminal case is not probative whether Maples' arrest was unlawful.   See Motion in Limine at 2.   Maples argues that, while generally the disposition of a § 1983 plaintiff's underlying criminal case is irrelevant to the Fourth

Amendment claims for unlawful arrest, "this case presents the odd exception to the [§ 1983] cases . . . [because] the defendant officers <u>were</u> the prosecutors who elected to dismiss the case by virtue of failing to appear before the Court in which they filed criminal cases."   MIL Response at 3. The Court agrees with Maples in part.   The danger of unfair prejudice and jury confusion presented by allowing the jury to hear about the underlying dismissal of Maples' criminal case substantially outweighs any probative value it may have in this case, and the Court will exclude the evidence.   The Court will, however, allow Maples to bring out that Vollmer and Fox failed to show up to testify against him in his underlying criminal trial, because any danger of prejudice or jury confusion it presents does not substantially outweigh its probative value for punitive damages.

I.   **THE COURT WILL EXCLUDE FROM EVIDENCE THE DISMISSAL OF MAPLES' UNDERLYING CRIMINAL CASE, BECAUSE THE DANGER OF UNFAIR PREJUDICE AND THE DANGER THAT IT WILL MISLEAD THE JURY SUBSTANTIALLY OUTWEIGHS THE EVIDENCE'S PROBATIVE <u>VALUE</u>.**

Maples is correct that the dismissal of his underlying criminal case is unique, because Vollmer's and Fox's failure to show up to testify against Maples resulted in its dismissal.   The dismissal is thus relevant to Maples' Fourth-Amendment unlawful arrest claim, but only to the extent that it may reflect on their beliefs at the time they arrested Maples, and only to the extent those beliefs are probative whether a reasonable officer would have held the same beliefs.   The dismissal, therefore, given its maximum probative effect is limited.   Allowing the jury to hear that Maples' criminal case was dismissed, however, poses a real and substantially danger that the jury will confuse the issues and also poses a danger of prejudice to the Defendants.   On balance, therefore, under rule 403, the danger of prejudice and jury confusion that will likely result from allowing the dismissal of Maples' underlying criminal case to go to the jury substantially

outweighs its probative value.

Rule 401 provides that "[e]vidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she had reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Keylon v. City of Albuquerque, 535 F.3d at 1216 (quoting Romero v. Fay, 45 F.3d at 1476). The Tenth Circuit has previously held that events subsequent to an alleged unconstitutional arrest, including dismissal or acquittal, do "not undermine [the validity of such an arrest] . . . ." Summer v. Utah, 927 F.2d 1165, 1166 (10th Cir. 1991)(citing Warren v. Byrne, 699 F.2d 95, 98 (2d Cir. 1983)). The Court has, in the past, concluded that a jury's acquittal of the § 1983 plaintiff on the underlying state criminal charge is irrelevant for purposes of the plaintiff's Fourth Amendment claims. See Taylor v. Hudson, No. CIV 02-775 JB/RHS, Memorandum and Opinion Order (D.N.M. Dec. 8, 2003)(Browning, J.). In Taylor v. Hudson, the Court found that an acquittal by a jury is not probative whether "the circumstances confronting the Defendants at the scene established probable cause for an arrest or not," reasoning that different standards govern "the issues of probable cause and guilt or innocence . . . ." See Taylor v. Hudson, No. CIV 02-775 JB/RHS, slip op. at *2. Thus, the Court noted that the Supreme Court has stated that "there is no logical

-11-

inconsistency between a finding of probable cause and an acquittal in criminal proceeding." Taylor v. Hudson, No. CIV 02-775 JB/RHS, slip op. at *3 (quoting Withrow v. Larkin, 421 U.S. 35, 57 (1975)).   The Court pointed out in Taylor v. Hudson, however, that "[n]either Defendant filed the criminal charges."   Taylor v. Hudson, No. CIV 02-775 JB/RHS, slip op. at *2.

The probative value of Maples' criminal case's dismissal, even given its maximum probative value, is limited.   See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274 ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").   The adverse inferences that the jury is likely to draw from hearing that the underlying criminal case against Maples was dismissed, and the little probative value that mention of Maples' dismissal adds to whether a reasonable officer would have believed probable cause existed to arrest Maples at the time they did so, leads the Court to conclude that it should exclude from trial evidence of the dismissal.

There are many reasons that a criminal case is dismissed, very few of which have anything to do with whether the arresting officer reasonably believed there was probable cause to arrest the defendant.   One very damaging reason, for police officers at trial in a subsequent case, is that the jury finds that the state has not proved its case beyond a reasonable doubt or the judge dismissed the case because the prosecution did not have probable cause.   The bottom line is that, if the Court allows Maples to tell the jury that the case was dismissed, the dismissal does not tell the jury anything about why the underlying case was dismissed.   Thus, the dismissal has no probative value.   The jury's speculation about the dismissal here could be very damaging to the defendant officers.   The jury could assume the worst -- that the state court dismissed the case because there was no probable cause.   The jury could then say to the Defendants that, if a state court found no

probable cause, it should follow suit and find that the officers never had probable cause here.   In

such a situation, the prejudice substantially outweighs the value of the evidence of the dismissal

alone.   Cases are dismissed for many reasons, and a witness' failure to testify, or the arresting

officer's failure to explain why he arrested the defendant are one among many.   The dismissal

alone is thus not probative of Vollmer's or Fox's evil motive or intent in arresting Maples, but does

present substantial danger of prejudice to them and substantial danger the jury will use the

information for an improper purpose.   The Court concludes that danger outweighs any probative

value information about the dismissal has in the case.   This rationale is the reason that courts

usually keep out the underlying dismissal in an unlawful arrest or detention case, and the Court

will do so here.

The Court believes that the danger of the dismissal of Maples' underlying case -- for

whatever reason it was dismissed -- remains strong and that evidence of the dismissal could

confuse the jury and/or cause unfair prejudice to Vollmer and Fox.   In other words, the danger of

unfair prejudice substantially outweighs the evidence, even given its maximum probative effect.

They jury's role here is to act as the factfinder, or, specifically, to determine whether Maples'

arrest was unconstitutional, because a reasonable officer would not have in fact had probable cause

to arrest Maples.   The Supreme Court has explained that the facts determinative whether an arrest

was lawful for Fourth Amendment purposes depend upon facts established before the arrest takes

place:

> The principal components of a determination of reasonable suspicion or probable
> cause will be the events which occurred leading up to the stop or search, and then
> the decision whether these historical facts, viewed from the standpoint of an
> objectively reasonable police officer, amount to reasonable suspicion or to
> probable cause. <u>The first part of the analysis involves only a determination of</u>
> <u>historical facts</u>, but the second is a mixed question of law and fact: "[T]he historical

> facts are admitted or established, the rule of law is undisputed, and the issue is
> whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to
> put it another way, whether the rule of law as applied to the established facts is or is
> not violated."

Ornelas v. United States, 517 U.S. at 696-97 (emphasis added).   These historical facts which the jury must determine for purposes whether Maples' arrest was constitutional are whether the facts Vollmer and/or Fox had were reasonably trustworthy, and would lead a prudent officer to believe Maples committed a crime.   See Keylon v. City of Albuquerque, 535 F.3d at 1216 ("Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she had reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.")(quoting Romero v. Fay, 45 F.3d at 1476).   Evidence about what happened after the arrest in Maples' criminal case poses a danger of confusing the jury when its task is already difficult.

The dismissal of Maples' state criminal case, given its minimum reasonable prejudicial value, remains substantially prejudicial to Fox and Vollmer in relation to Maples' Fourth-Amendment unlawful arrest claim, as it has a tendency to mislead the jury and tends to adversely affect the jury's attitude toward the Vollmer and Fox apart from the wrongs alleged. Dismissal of a criminal case often causes confusion when the jurors are asked in a civil trial to find by a preponderance of the evidence whether a reasonable officer would have believed probable cause existed, as opposed to being asked to find beyond a reasonable doubt that the plaintiff committed a crime.   For Fourth Amendment purposes, therefore, information about Maples' underlying criminal case can be confusing and is not, given the standard of proof here, probative. The facts on which the jury must make its reasonableness determination are those facts known to Vollmer and/or Fox at the time they arrested Maples that a reasonable officer would consider for

-14-

probable cause, in the context of the events of that day, and not the facts with the benefit of hindsight, 20/20 vision.   Although the danger of unfair prejudice and the danger of misleading the jury are two separate concerns in admitting evidence under rule 403, these concerns are intertwined under the circumstances here.   Learning that officers arrested a suspect because they believed at the time that the suspect committed a crime, and then subsequently learning that the suspect was never convicted, negatively affects, and is thus prejudicial to a later determination whether the belief was originally reasonable.   Even if the Defendants are provided the opportunity to rebut this improper inference, to explain to the jury the different standard of proof required to convict a person of a crime, and how that differs from probable cause to believe the person committed a crime, the rebuttal is likely unavailing of the prejudice the adverse inference will have had on the jury.

Allowing the plaintiff in a Fourth Amendment case to introduce into evidence the results of the state criminal case could also give the plaintiff the ability to force the defendant officers themselves to present evidence that is also not helpful to the jury.   While here, Maples wants to put the dismissal and the reasons for the dismissal into evidence, another plaintiff might choose to put into evidence only the dismissal, hoping the jury will speculate that the jury in the underlying criminal case did not find the plaintiff guilty, or that the jury found there was no probable cause to begin with.   The fear of jury speculation might thus prompt the defendant officers to have to put into evidence the true reason, a strategic move that the defendant officers would not at all like to make, but would have to so that the plaintiff's evidence did not leave the jury with a sour taste and no evidence from the defendants with which to cleanse their palate.

II.     **BECAUSE THE COURT WILLL NOT ADMIT EVIDENCE OF THE DISMISSAL, THERE IS NOT SOUND RATIONALE TO ADMIT THE REASON FOR THE**

**STATE COURT DISMISSAL.**

The Court has decided, as it has before and as have many other courts, that the resolution of the state court case should not be presented to the jurors as evidence.   Evidence of the dismissal -- by itself -- tells the jury in an unlawful arrest case almost nothing.   On the other hand, the jury's possible use of the dismissal could be prejudicial to the defendant officers, because the evidence could suggest the officers lacked probable cause for  the arrest at the time.   Accordingly the prejudice to the defendant officers of an underlying state court dismissal substantially outweighs the evidence's minimal probative value.   And because the Court is not admitting the evidence of the dismissal, there is no reason for the Court to decide whether the evidence of the reason for the dismissal should come into evidence.   If the dismissal is not coming in, the reason for the dismissal, similarly, should not come in either.

Maples suggests that he can solve the prejudice of the evidence by introducing more evidence about the dismissal.   In this case, Vollmer and Fox were responsible for Maples' prosecution, and their failure to testify against Maples resulted in his dismissal.   Given its maximum reasonable probative force, this evidence may show that Vollmer and/or Fox knew that they never had reasonable suspicion or probable cause, and between the time that they arrested and charged Maples, and the time at which they were required to appear in court, came to believe that they did not have probable cause to arrest Maples under the circumstances.

Vollmer's and/or Fox's determination -- whenever made -- that they lacked probable cause to arrest Maples here sheds some light on whether a reasonable officer would come to the same determination.   After all, the City of Albuquerque, Vollmer, and Fox all vigorously argue that Vollmer and Fox are reasonable officers.   The jury could agree and decide that they later

determined that they did not have probable cause. On the other hand, even if, as Vollmer and Fox

may have done, a reasonable officer determined between Maples arrest and the trial against him,

that there was not probable cause to arrest him, such a determination is not conclusive.

The Fourth-Amendment's reasonableness test does not look at whether the arrest was

reasonable in hindsight.   Probable cause for an arrest is, rather, based on what a reasonable officer

would have done under the same circumstances, given the facts that the officers had at the time.

See Tanner v. San Juan Cnty. Sheriff's Office, 864 F. Supp. 2d at 1115 (noting that the Fourth

Amendment "reasonableness" of an officer's actions "'must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight'")(quoting Graham

v. Connor, 490 U.S. at 396).   Notably, "[t]he Tenth Circuit [has] found that [where] the facts

available to the officer would have led a reasonable officer to conclude that reasonable suspicion

existed, . . . the officer's 'subjective characterization of his actions is irrelevant.'"   United States

v. Rodriguez, No. CR 11-2158 JB, 2012 WL 6005765, at *10 (D.N.M. Nov. 30, 2012)(Browning,

J.)(quoting United States v. Ceballos, 355 F. App'x 226, 229 (10th Cir. 2009)(unpublished)).

Vollmer's and Fox's possible subjective though at the time of the arrest that they lacked reasonable

suspicion or probable cause, or their possible after-the-fact determination that they could not prove

beyond a reasonable doubt Maples committed a crime, if Vollmer and Fox made any of these

determinations at all, therefore adds little probative value to the jury.   Thus, while the officers'

failure to appear for court, if in fact they did so because they believed at some point that they

lacked probable cause to arrest Maples in the first place, makes more probable that a reasonable

officer would have believed that he or she lacked probable cause to arrest Maples than no evidence

at all, this evidence is not legally material and has limited probative value to the Fourth

Amendment's objective reasonableness test.   Thus, the maximum probative force of Maples' dismissal, notwithstanding that it was dismissed because Vollmer and Fox failed to testify at his trial, is not strong.   It is probative only if their failure to appear to testify against him at trial reflected their belief that they lacked probable cause existed at the time of the arrest, and only to the extent that a reasonable officer would have agreed with their belief, and would have agreed with their belief at the time of Maples' arrest.

The Court is concerned that the prejudice to Fox and Vollmer here could worsen if the jury knows that Maples' dismissal resulted from Vollmer's and Fox's failure to testify at trial.   If, for example, Vollmer and Fox explain that appearing in court takes time away from their availability to enforce the laws outside of the courtroom, and that they chose not to prosecute Maples because they did not have time to do so, this explanation will likely not balance out the information's prejudice.   The jury might be angered that Vollmer and/or Fox, or police officers generally, let some suspects who committed a crime go free simply because of a lack of resources. Alternatively, the jury might conclude that such an explanation is merely a scapegoat, and will influence their opinions whether Vollmer and/or Fox are credible.

If, on the other hand, Vollmer and Fox believed at the time they arrested Maples that they had probable cause to so, and, in the intervening time before his court appearance, they decided that they did not have the evidence to prove beyond a reasonable doubt that Maples committed a crime, or even if they concluded that they lacked probable cause in the first place, not going to court, and allowing dismissal of the charges against Maples was likely economical and the proper determination of the case against Maples.   There is a danger present here that a jury would improperly use that information, or that the information would mislead the jury to jump to the

conclusion that a reasonable officer would therefore not have believed probable cause existed under the circumstances at the time Vollmer and/or Fox arrested Maples, rather than to reach that conclusion on their own, as the law requires.   Even if the jury overcame these improper inferences and uses of Vollmer's and Fox's failure to prosecute Maples' criminal case, the evidence would likely still mislead the jury.   It is human nature to take all evidence into account when making a decision.   The jury's task is to decide whether an arrest was reasonable, and for the jury to know that Maples was arrested based on belief he committed a crime, and that thereafter those who held that belief never acted on it by prosecuting him, and yet not give this evidence some level of credence, even subconsciously, may be asking too much of the jury.

The Fourth-Amendment objective test for reasonableness of an arrest under the circumstances is a difficult concept for lawyers to grasp, let alone for lay members of the jury to apprehend.   The possibility that an after-the-fact determination of reasonableness will mislead the jury on their task to determine whether the arrest was reasonable at the time is a great danger. Add to that calculus the possible prejudice resulting from knowledge that the police officers who arrested Maples did not prosecute the resulting criminal case against him, and this evidence becomes substantially prejudicial.   Maples has not asserted a claim for malicious prosecution. The Court does not believe that it needs to add to the jury's task here by requiring them to understand the difference between, in hindsight, proof beyond a reasonable doubt that a crime was committed, and the grounds on which a reasonable officer might articulate belief that a crime was committed.   Given that this evidence of dismissal -- for whatever reason -- developed after Maples' arrest, and the reasonableness of the officers' arrest is to be determined based on the circumstances at the time of the arrest, evidence of Maples' criminal case's dismissal provides

-19-

minimum probative value at best, but presents substantial danger of prejudice and jury confusion. The Court therefore determines that the danger of the dismissal's prejudice or possibility that it will mislead the jury substantially outweighs its probative value, and will exclude from trial evidence of Maples' underlying criminal case.

In the end, the jury's task should remain as clear as possible: the Fourth Amendment analysis focuses on events that occurred that the time of the incident, i.e., what a reasonable officer would have believed under the circumstances, and what a reasonable officer would have done under those circumstances.  The subjective thoughts of the officer in the case are legally irrelevant, although the Court can hardly say that they are factually irrelevant to the factfinder in determining what a reasonable officer would have done.  Nevertheless, the Court thinks that after-the-event evidence tells the Court so little about the officer defendant -- much less a reasonable officer -- that the dismissal and reason for the dismissal are not probative enough, and distract the jury from its already difficult task of determining what a reasonable officer would have done.   Dismissal of a state case -- even when the defendant officers are the prosecutors in the case -- should be left out of the evidence given to the jury.

**III.   THE COURT WILL ALLOW MAPLES TO BRING OUT THE LIMITED EVIDENCE THAT VOLLMER AND FOX DID NOT SHOW UP TO TESTIFY IN HIS UNDERLYING CRIMINAL TRIAL, BECAUSE THE EVIDENCE IS RELEVANT, AND THE DANGER OF UNFAIR PREJUDICE AND JURY CONFUSION THE EVIDENCE PRESENTS DOES NOT OUTWEIGH ITS PROBATIVE VALUE.**

Maples contends that Vollmer's and Fox's decision not to prosecute the case is probative whether they believed there was probable cause for Maples' arrest.  Punitive damages for his § 1983 claims depend on the officers' subjective beliefs.  The Supreme Court has held that, for purposes of determining whether to award a plaintiff punitive damages under § 1983, "a jury may

-20-

be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by <u>evil motive or intent</u>, or when it involves reckless or callous indifference to the federally protected rights of others."   <u>Smith v. Wade</u>, 461 U.S. at 56 (emphasis added). The appropriate focus in awarding punitive damages "must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory damages.'" <u>Youren v. Tintic Sch. Dist.</u>, 343 F.3d at 1308 (quoting <u>Smith v. Wade</u>, 461 U.S. at 54).

In <u>Montoya v. Shelden</u>, No. CIV 10-0360 JB/WDS, 2012 WL 4950707 (D.N.M. Oct. 12, 2012)(Browning, J.), the Court concluded that evidence of prior, unrelated civil rights claims against the defendant police officers was relevant to the plaintiffs' punitive damages claims.   <u>See</u> 2012 WL 4950707, at *16 ("While intent is not a fact of consequence in most § 1983 claims for excessive force, because liability depends mostly upon whether Shelden and Lovato acted objectively reasonable under the circumstances, in a § 1983 claim for punitive damages, Shelden and Lovato's intent is of consequence.").   The Court found, however, that only those prior civil rights cases in which the jury determined the officers violated plaintiffs' civil rights were probative of intent, reasoning that mere allegations without more provide little probative value:

> [C]ases of excessive force not ending in a judgment, even where those cases settled, do not tend to make a fact more or less probable, because a case that is not resolved in a judgment does not provide affirmative evidence of Shelden's or Lovato's intent.   Cases that are settled or dismissed do not tell the new Court or the new jury anything about the officers' intent or motive in prior cases; the allegations were never found to be fact, and remain allegations.   The Court should not therefore receive as evidence Shelden and Lovato's past cases that did not end in a judgment against them as evidence that Shelden or Lovato used excessive force, or as evidence that they had an evil motive while doing so in this case. Allegations have little, if any, probative value.

2012 WL 4950707, at *16. The Court concluded, however, that where a case ended with a jury finding that the officers violated a plaintiff's civil rights in using excessive force against the

plaintiff, the case was probative of their intent.   This evidence provided the jury with knowledge

of an amount of force judged objectively unreasonably, and thus might reflect on the defendant

officers' subjective knowledge about whether their use of force under the circumstances was

unreasonable in the present case.   See 2012 WL 4950707, at *16.   The Court stated:

> A judgment entered before the alleged unconstitutional conduct, makes more
> probable that Shelden or Lovato acted with recklessness for the civil rights of the
> Montoyas, because it would put Shelden or Lovato on notice of constitutionally
> reasonable force, making it more probable that they appreciated the risk of using
> excessive force at the time they did so, and still acted in the face of that perceived
> risk.

2012 WL 4950707, at *16 (citing Kolstad v. Am. Dental Ass'n, 527 U.S. at 536 (defining

recklessness as a defendant acting "in the face of a perceived risk that its actions will violate

federal law")).

Vollmer's and Fox's failure to show up to testify and to prosecute the case against Maples

makes more probable that they believed they lacked legal authority to arrest Maples at the time that

they did so then without this evidence.   The Court reasoned in Montoya v. Shelden that prior civil

rights cases ending in verdicts that the officers' used excessive force reflected their intent as

probative whether they subjectively knew the amount of force was unreasonable.   Similarly,

Vollmer's and Fox's failure to show up to testify why they had the lawful ability to arrest Maples is

probative whether they knew at the time they arrested him they had that ability.   The Court found

that knowledge in Montoya v. Shelden probative whether, in light of the officers' beliefs, they

acted with evil intent, so here.   Similarly, Vollmer's and Fox's knowledge and beliefs is probative

whether they arrested Maples with evil intent or motive -- a fact at issue in Maples' punitive

damages claim.   Vollmer's and Fox's failure to show up to testify, and thus their failure to

prosecute the case against Maples, is relevant.   See Fed. R. Evid. 401 ("Evidence is relevant if: **(a)**

it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.").

With regard to evidence that Vollmer and Fox failed to show up to testify against Maples without mentioning the resulting dismissal, the Court concludes that this limited evidence is admissible under rule 403. The evidence that they chose not to go to court to testify against Maples, given its maximum probative value, makes more likely that they believed they lacked legal authority to arrest Maples at the time of the incident or made some time later, than if the jury had no evidence about their choice not to go to court. Although this evidence prejudices them, given that Vollmer and Fox had the ability to appear in court and chose not to attend, they now will have the ability to explain to the jury why they made the choice not to go to court. Keeping away the evidence that Vollmer's and Fox's decisions necessarily resulted in dismissal of the case takes away much of the possibility of the jurors' reliance on the dismissal in state court, and puts Vollmer and Fox in the place of many civil defendants: the position in which they must explain why the plaintiff's case against them -- Maples' punitive damages claim -- is without a basis in the law or the facts. It provides them the opportunity to explain the reason that they did not go to court to testify against Maples, and to explain why this evidence that Maples asserts shows that they acted with bad intent or evil motive in arresting him does not do show such scienter. The Court thus concludes that the probative value of allowing Maples to bring out that Vollmer and Fox did not go to court to testify against him in his criminal case, while keeping out the prejudicial and possibly confusing information that the underlying criminal trial was then dismissed, strikes a proper balance under rule 403. Accordingly, the Court will allow Maples to bring out this limited evidence about Vollmer's and Fox's failure to go to court to testify against him at the underlying

criminal trial.

**IT IS ORDERED** that the Defendants' First Motion in Limine to Exclude Evidence of the Results from Plaintiff's Underlying Criminal Case, filed March 1, 2013 (Doc. 40), is granted in part and denied in part.   The Court will not allow Plaintiff Justin Maples to present evidence that the state court dismissed the underlying criminal charges against him, but will allow Maples to put in evidence that Defendants Matthew Vollmer and David Fox did not go to court to testify against him in his underlying state criminal case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Anna C. Martinez
Albert L. Hutchinson, Jr.
Aequitas Law, LLC
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

David Tourek
  City Attorney
Stephanie M. Griffin
Kristin J. Dalton
   Assistant City Attorneys
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*